[Cite as *State v. Smith*, 2024-Ohio-2189.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-230415 |
| | | C-230416 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-22CRB-13492 |
| | | C-22TRC-18365A |
| vs. | : | C-22TRC-18365B |
| JOHNATHAN SMITH, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From:   Hamilton County Municipal Court

Judgments Appealed From Are:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: June 7, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Following a bench trial in the Hamilton County Municipal Court, defendant-appellant Johnathan Smith was convicted of using weapons while intoxicated in violation of R.C. 2923.15, a misdemeanor of the first degree; operating a motor vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; and stopping in traffic in violation of R.C. 4511.22, a minor misdemeanor. Because the state did not present sufficient evidence at trial to demonstrate that the venue of these offenses was Hamilton County, Ohio, the judgments of the trial court are reversed, and Smith is discharged from further prosecution for these offenses.

### Factual and Procedural Background

{¶2} On August 6, 2022, at approximately 3:00 a.m., Officers Adam Quinn and Cody Leach of the Green Township Police Department responded to a report that a car was stopped on the North Bend exit ramp of Interstate 74. Following their investigation, Smith was charged with one count of using a weapon while intoxicated, one count of OVI, and one count of stopping in traffic. On July 18, 2023, Smith was tried before a judge of the Hamilton County Municipal Court.

{¶3} At trial, Quinn testified that, at the time of the incident, he was employed as a patrol officer for the Green Township Police Department. According to Quinn, he encountered Smith on the off-ramp of Interstate 74 to North Bend Road after being dispatched to investigate a vehicle sitting in the roadway for multiple light cycles. Quinn indicted that there were two male occupants in the vehicle, one in the driver's seat and one in the passenger seat. Quinn observed that they appeared to be asleep or unconscious, and he identified Smith as the driver of the vehicle. Quinn

2

testified that he opened the door of the vehicle to wake the occupants. According to Quinn, once the occupants were awake, he instructed that the car be placed into park and turned off. Quinn then requested Smith to exit from the vehicle.

{¶4}   Quinn testified that once out of the vehicle, Smith was instructed to walk to the passenger side, where Leach began questioning him about where he was coming from. Quinn testified that Smith mumbled his answer, but ultimately stated that he wanted a lawyer. Quinn then placed Smith under arrest for OVI. While searching Smith as part of the arrest, Quinn found a black handgun in his cargo shorts. Quinn testified that Smith eventually stated that he lived in Ohio.[1] Quinn testified that Smith was placed in the back of Leach's vehicle and taken to the police station. Quinn explained that he took the gun to the Green Township Police Department and logged it into evidence.

{¶5}   Quinn did not further identify the location of Interstate 74 or the North Bend exit ramp, nor did he testify that these roadways are located in Hamilton County. He also did not identify the location of Green Township or describe where it is situated geographically.

{¶6}   Leach testified that, at the time of the incident, he was a patrol officer for the Green Township Police Department and had previously worked for the Hamilton County Sheriff's Office. He testified that he responded to a call of a disabled vehicle on Interstate 74 and North Bend, arriving behind Quinn. According to Leach, when he arrived, the occupants of the vehicle appeared to be sleeping. Leach testified that, when Smith came to the passenger side of the vehicle, Smith leaned against the

---

[1] The dissent cites portions of Quinn's conversation with an unidentified female who was en route to pick up the passenger. This conversation was recorded on Quinn's body-worn camera. However, the trial court sustained an objection to this portion of the camera footage and began playing the footage again at the point after Quinn's discussion with the unidentified female had concluded. Thus, the portion of the body-worn camera footage cited by the dissent is not in evidence.

car for stability while being questioned.  Leach further testified that when he asked Smith where he was coming from, he responded he had left his "peoples" house.

{¶7}    Leach testified that Smith was moving slowly and sluggishly and that an odor of alcohol was coming from Smith and the vehicle.  He explained that he first noticed the smell when Smith came around the vehicle and began speaking.  Leach testified that as soon as Smith asked for a lawyer he was placed under arrest.  When Smith was asked if he would complete field-sobriety tests, Leach explained that Smith responded "lawyer."  Once at the police station, Leach testified that he asked Smith if he wanted to submit to a breath test, which Smith declined.  Leach testified that, based on his experience, it was his opinion that Smith was intoxicated because he was slow to answer, had a "slight slur," and had the smell of alcohol coming from his person.  Leach also explained that Smith was polite and cooperative during the encounter.

{¶8}    Like Quinn, Leach also did not further elaborate as to the location of Interstate 74, the North Bend exit ramp, or Green Township, and did not indicate that any of the activities he described occurred in Hamilton County.

{¶9}    During Leach's testimony, the state played two separate video clips from Leach's body-worn camera.  The second clip depicts Leach and Smith interacting in a small room inside what appears to be a police station, although the exact location was not confirmed by Leach in his testimony.  At several points in the video, Leach sat at a computer station where paper signs were affixed to the wall, as shown here:



{¶10} Notably, one sign on the wall read: "Green Township Police Department, Hamilton County, Ohio, J0001, 01/01/2001, Example (Juv's Only)." No witness testified as to the contents or context of this sign.

{¶11} After the state rested its case, defense counsel made a Crim.R. 29 motion for an acquittal. During his argument, defense counsel argued that the state had failed to establish venue. Defense counsel argued that none of the state's witnesses testified that the incident occurred in Hamilton County or the state of Ohio and that the only evidence presented at trial to identify the location of the incident was the name of the roadway. In response, the state argued that the road names were sufficient evidence to establish that venue was proper in Hamilton County. In addressing the question of venue, neither the defense nor the state referenced the sign in Leach's video nor any road signs or other landmarks visible in Leach's body-worn

camera footage. Ultimately, the trial court overruled the defense's Crim.R. 29 motion. It did so without reference to the sign in Leach's video. The defense did not call any witnesses and rested.

{¶12} The trial court found Smith guilty of all three charges. On the weapons charge, the trial court stated that the sentence was "180, cost remit." On the stopping-in-traffic charge, the trial court stated the sentence was "$60, costs remit, pay through." On the OVI, the trial court stated the sentence was " 180, suspend 176, credit one, three-day Driver Intervention Program as soon as possible. * * * $375 fine, plus costs; six-month probation. I will make it nonreporting probation." The trial court also imposed a one-year driver's license suspension retroactive to the date of the incident.

{¶13} Smith timely filed this appeal.

## *Analysis*

{¶14} On appeal, Smith raises three assignments of error. First, Smith argues that his convictions were based on insufficient evidence and contrary to law. Second, Smith argues that the trial court erred in sentencing him for the minor misdemeanor of stopping in traffic. Third, Smith argues that the trial court violated his rights under Crim.R. 43(A).

## *Venue*

{¶15} In his first assignment of error, Smith argues that the state failed to present sufficient evidence to prove venue. He also argues that his convictions are against the manifest weight of the evidence. We first address Smith's argument as to venue, as it is dispositive of this case.

{¶16} To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *see State v. Curry*, 1st Dist. Hamilton No. C-190107, 2020-Ohio-1230, ¶ 11.

> Pursuant to Section 10, Article I, of the Ohio Constitution, a criminal defendant is to be tried in the county in which the offense is alleged to have been committed. R.C. 2901.12 confers subject-matter jurisdiction upon a trial court in the territory of which the offense or any element thereof was committed. Although venue is not an element of an offense, it must be proved by the state beyond a reasonable doubt. If the prosecution does not present sufficient evidence to prove venue, the conviction must be reversed.

(Internal citations and quotation marks omitted.) *State v. Keeling*, 1st Dist. Hamilton No. C-010610, 2002-Ohio-3299, ¶ 22.

{¶17} Relying on these principles, Smith contends that the state failed to present sufficient evidence that the conduct that formed the basis of the three charges against him took place in Hamilton County, Ohio. After a review of the record, we agree.

{¶18} At trial, the state presented some evidence as to where Quinn and Leach encountered Smith behind the wheel of his car, apparently asleep, and in possession of a firearm. Both officers testified the incident took place at the North Bend exit ramp off of Interstate 74. Both officers also indicated that they were employed by the Green

Township Police Department at the time. Neither officer explained where North Bend, Interstate 74, and Green Township are located.

{¶19} In fact, the only time any witness mentioned the state of Ohio was when Quinn testified that Smith stated that he lived in Ohio. And the only testimony regarding Hamilton County came from Leach, who indicated that he transported paperwork that he had created after arresting Smith to the Hamilton County Justice Center. Neither of these references tied the specific conduct at issue–Smith's driving and possession of a weapon–to any particular location. The record is therefore devoid of any direct evidence that the incident occurred in Hamilton County, Ohio.

{¶20} On appeal, the state concedes that the officers did not expressly testify that the event occurred in Hamilton County. However, the state contends that it presented sufficient circumstantial evidence to properly establish venue. Specifically, the state argues that because the Green Township Police Department and no other jurisdiction responded to the scene, venue in Hamilton County could be inferred. In making this argument, the state presumes knowledge that Green Township is located in Hamilton County, Ohio, and does not cite to the sign on the wall in Leach's body-worn camera footage or any other evidentiary source as proof of Green Township's geographical location. The state also relies upon a "Subject Test Refusal Report" submitted as state's Exhibit Two at trial, as indirect evidence of venue. The report was issued by the Ohio Department of Health and contained a residential address for Smith in Cincinnati. After a review of the record and relevant case law, we disagree with the state's assertion that venue was established through circumstantial evidence.

{¶21} For guidance, we turn to this court's decision in *State v. Sullivan*, 1st Dist. Hamilton Nos. C-130628 and C-130629, 2014-Ohio-3112. In that case, the

defendant was convicted of failure to stop and improper backing after a traffic accident. *Id.* at ¶ 1. At trial, a police officer and the victim of the accident identified the streets where the traffic accident occurred and referenced other nearby streets, but they did not indicate that the streets were located in Hamilton County or in Ohio. *Id.* at ¶ 10. On appeal, this court found this evidence "not sufficiently unique to permit the conclusion that the offenses occurred in Hamilton County, Ohio." *Id.* at ¶ 11.

{¶22} We are similarly guided by our previous decision in *State v. Gardner*, 42 Ohio App.3d 157, 536 N.E.2d 1187 (1st Dist.1987). In that case, the defendant was convicted of assaulting a restaurant owner. *Id.* at 157. The testimony at trial revealed that the restaurant was located at 1412 Vine and that the defendant lived at 28 East Thirteenth Street. *Id.* The issue of venue had not been raised before the trial court; therefore, this court reviewed it for plain error. *Id.* Even under that exacting standard, this court held that the evidence presented was "insufficient to prove venue." *Id.* at 158.

{¶23} We note that *Sullivan* and *Gardner* are two of many cases in which the identification of street names, both with and without other evidence of location, has been held insufficient to establish venue under Article I, Section 10 of the Ohio Constitution. *See, e.g., State v. Lahmann*, 12th Dist. Butler No. CA2006-03-058, 2007-Ohio-1795 (holding that defendant received ineffective assistance of counsel because his attorney did not move for acquittal on the basis that the state, which presented only evidence of street names, did not establish venue); *State v. Myers*, 9th Dist. Summit No. 21874, 2004-Ohio-4195 (holding evidence that defendant lived in North Canton, that the assault occurred at Suburb Inn on Arlington Street, that the

victim was treated at Akron General Hospital, and that Akron police investigated to be insufficient to establish venue).

**{¶24}** Attempting to distance this case from that precedent, the state relies upon this court's decision in *State v. Hinkston*, 1st Dist. Hamilton Nos. C-140448 and C-140449, 2015-Ohio-3851, in its brief. In *Hinkston*, the defendant was convicted of felonious assault with a gun specification, having a weapon while under disability, and trafficking in cocaine and heroin. *Id.* at ¶ 1. Regarding venue, this court referenced testimony that the stop occurred on Glenway Avenue, but noted an absence of evidence connecting this specific location to Cincinnati or Hamilton County at trial. *Id.* at ¶ 13. The court noted, however, that both detectives identified themselves as Cincinnati police officers. *Id.* Without explicitly explaining why, the court determined that evidence inferring that the crimes took place in Cincinnati, rather than in Hamilton County specifically, would be enough to establish venue, presumably because Cincinnati is generally known to be located in the state of Ohio and in Hamilton County. *Id.*

**{¶25}** The court in *Hinkston* also credited two pieces of circumstantial evidence that tied Hinkston's conduct to Hamilton County. *Id.* First, Hinkston signed a notification-of-rights form that bore the label of the Cincinnati Police Department, again conflating the city of Cincinnati with Hamilton County. *Id.* Second, the drugs that were found on Hinkston's person were analyzed by the Hamilton County Crime Laboratory. *Id.* Considering the evidence as a whole, the court held that the state had provided sufficient evidence to permit the jury to conclude that the offenses occurred in Hamilton County. *Id.*

{¶26} Smith's case is distinguishable from the facts presented in *Hinkston*. Here, the officers that arrived at the scene were Green Township officers, not Cincinnati police officers. There is nothing in the record before us that convincingly establishes that Green Township is located in Hamilton County or the state of Ohio.

{¶27} In reaching this conclusion, we note the lack of evidence providing context for the wall sign displayed in Leach's body-worn camera footage. By its very terms, the sign itself indicates it is an "example," it is dated more than 20 years ago in 2001, and it appears to apply to juveniles only. The fact that neither the state nor the trial court cited the sign as evidence of venue further undercuts its value in demonstrating where Smith's conduct occurred.

{¶28} Moreover, the "Subject Test Refusal Report" submitted by the state as Exhibit Two at trial is not as helpful to the venue question as the Cincinnati Police Department rights form was in *Hinkston*. There are several noticeable distinctions between the two documents. For one, the *Hinkston* form was signed by Hinkston himself, whereas Exhibit Two was unsigned. Thus, the form itself does not place Smith in any particular geographic location by virtue of a signature. For another, Exhibit Two merely indicates the form was created by the Ohio Department of Health and contains a certification number for the Green Township Police Department. While this might support the inference that Green Township is located in Ohio, it does not prove that Green Township is in Hamilton County as Article I, Section 10 of the Ohio Constitution requires.

{¶29} Therefore, the record is devoid of sufficient evidence from which reasonable minds could conclude beyond a reasonable doubt that Smith's conduct occurred in Hamilton County, Ohio. We accordingly sustain Smith's first assignment

of error, reverse the trial court's judgments, and order Smith discharged from further prosecution.

{¶30} Because we have sustained Smith's first assignment of error, Smith's remaining assignments of error are moot, and we decline to address them.

Judgments reversed and appellant discharged.

BOCK, P.J., concurs.
ZAYAS, J., dissents.

ZAYAS, J., dissenting.

{¶31} I respectfully dissent because the record contains sufficient evidence to establish venue. While I agree that the state did not precisely establish that the crime occurred in Hamilton County, express evidence is not required to establish venue. *See State v. Khong*, 29 Ohio App.3d 19, 502 N.E.2d 682 (1985), paragraph five of the syllabus. The state need not prove venue in express terms so long as it is established by all the facts and circumstances in the case. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983); *State v. Hinkston*, 1st Dist. Hamilton Nos. C-140448 and C-140449, 2015-Ohio-3851, ¶ 11 (Venue can be established "by the evidence as a whole or by circumstantial evidence.").

{¶32} Here, both officers testified that they were on duty for the Green Township Police Department when they received the call. Officer Quinn testified that he encountered Smith on the off-ramp of westbound Interstate 74 to North Bend. Quinn's entire body-camera video was played in court.[2] He had a conversation with a

---

[2] Although the majority claims that only a portion of the video was played, the record reflects that the entire video was played. *See* T.p. 76-78. The video was paused and resumed several times due to testimony and objections. Smith objected to the statements made by the passenger, and the court sustained the objection and stated, "Okay. I will disregard what the passenger is saying." T.p. 77. The prosecutor resumed playing the video until Quinn stated, "I think that's pretty much at the end of it." T.p. 77-78. Accordingly, the record reflects that the entire video was played and the statements made by the passenger were disregarded.

woman who was picking up the passenger. Initially, Quinn was going to have her retrieve the passenger from the Speedway down the street at the corner of West Fork and North Bend Roads. Because she was only a few minutes away, Quinn told her to pick the passenger up at the end of the exit ramp and instructed her to "come down North Bend like you're going towards West Fork, you will see the car on the exit ramp to North Bend right by the flag pole and the big Green Township sign." The flagpole is visible in the video.

{¶33} A second video was played showing Leach, Smith, and another officer at the Green Township Police Department. Significantly, a sign, visible on the wall, says, "Green Township Police Department, Hamilton County, Ohio." The video also depicts Smith being informed that his Ohio driver's license would be suspended, informing him that he would be taken to the Justice Center, and confirming he still lived in Hamilton County. During the video, Leach scanned Smith's driver's license into the Intolixyzer to run the test after confirming that Smith refused to take the test. The test form, which was admitted into evidence, was called "Ohio Department of Health Alcohol and Drug Testing Subject Test Refusal Report." The printed form included Smith's name, address, date of birth, age, sex, and race and said, "Subject Test Refused." In addition, Leach testified that he transported the charging documents to the Hamilton County Justice Center.

{¶34} The state need not prove venue in express terms "so long as it is established by all the facts and circumstances in the case." *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983); *Hinkston,* 1st Dist. Hamilton Nos. C-140448 and C-140449, 2015-Ohio-3851, at ¶ 11. Circumstantial evidence inherently possesses the same probative value as direct evidence. *See State v. Treesh*, 90 Ohio St.3d 460,

485, 739 N.E.2d 749 (2001). The Ohio Supreme Court has held that although venue need not be proven in express terms, it must be clear from the evidence that no other inference can reasonably be drawn by the finder of fact than the offense occurred within the jurisdiction of the court. *State v. Dickerson*, 77 Ohio St. 34, 56, 82 N.E. 969 (1907).

{¶35} "[T]estimony showing that an offense occurred at a particular street address, standing alone, is generally insufficient to prove venue, since such addresses often are not 'sufficiently unique' to permit the conclusion that the address is located in a particular city or county." *State v. Lahmann*, 12th Dist. Butler No. CA2006-03-058, 2007-Ohio-1795, ¶ 34. However, a street address in combination with testimony that a certain locality's investigative body was assigned to the alleged crime is sufficient to establish venue. *See State v. Curry*, 2d Dist. Greene No. 2012-CA-50, 2014-Ohio-3836, ¶ 23 (testimony that the offense occurred in Lexington Park and the Xenia police responded was "more than sufficient to establish venue"); *State v. Norton*, 2d Dist. Greene No. 97 CA 112, 1998 Ohio App. LEXIS 5872, 7-8 (Dec. 11, 1998) (evidence that officers from the Greene County Sheriff's Department investigated a burglary in Bath Township was sufficient to prove venue in Greene County); *State v. Woodson*, 4th Dist. Ross No. 97-CA2306, 1998 Ohio App. LEXIS 554 (Feb. 5, 1998) (evidence that a Ross County deputy sheriff investigated a robbery committed in Bainbridge was sufficient to establish venue in Ross County); *State v. Shuttlesworth*, 10 Ohio App.3d 281, 661 N.E.2d 817 (7th Dist.1995) (evidence that the officer was on duty for the Cadiz Police Department along with the address of the parking lot where the offense occurred was sufficient to establish venue in Harrison County); *State v. Brown*, 7th Dist. Mahoning No. 03-MA-32, 2005-Ohio-2939

(venue was established in Mahoning County where the defendant's address was testified to and the arresting officer, a Youngstown police officer, arrested defendant at that address); *State v. Gay*, 2d Dist. Montgomery No. 28194, 2019-Ohio-2349, ¶ 8 (venue was established in Montgomery County because the defendant testified that he was at his home in Harrison Township when the threats were made).

{¶36} Here, we have more than a nonunique street address. The offense occurred on the exit ramp of a major interstate that runs through Green Township, and the vehicle was stopped next to the big Green Township sign. Similarly, in *State v. Ealy*, 5th Dist. Licking No. 16-CA-31, 2016-Ohio-7927, ¶ 26, the Fifth District held that the trooper's testimony that he was "based out of the Granville Post, and encountered appellant at a rest area on I-70 in Licking Township" was sufficient to prove venue in Licking County.

{¶37} Additionally, the arresting officer worked for Green Township and had received a call about the vehicle parked on the exit ramp. "It is well known that police officers normally do not effect arrests outside their territorial jurisdiction in the absence of hot pursuit, and nothing of record suggests that this was a hot pursuit situation." *State v. Monnin*, 2d Dist. Darke No. 1350, 1994 Ohio App. LEXIS 4593, 4 (Oct. 12, 1994). The officer took Smith to the Green Township Police Department for a breath test. A sign in the police department said "Green Township Police Department, Hamilton County, Ohio." During the arrest process, Smith was informed that he would be transported to the Justice Center, his Ohio driver's license was suspended, his driver's license was scanned into the breathalyzer to generate the Ohio Intoxilyzer test refusal form, and the charging documents were transported to the Hamilton County Justice Center. Although the record is devoid of direct testimony

that the offenses occurred in Hamilton County, the circumstantial evidence established that the offenses occurred in Hamilton County.

**{¶38}** Smith further argues that his convictions were contrary to the weight of the evidence because it was possible that he was sleep deprived and not impaired. A manifest-weight argument "challenges the believability of the evidence." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 10. An appellate court must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).

**{¶39}** Here, the evidence established that Smith was the driver of a vehicle stopped in the roadway on an off ramp. Smith and his passenger appeared to be sleeping or unconscious. Leach testified that he observed Smith moving slowly and sluggishly and holding onto the vehicle for support. Smith was slow to answer questions and slightly slurred his words. Leach smelled an odor of an alcoholic beverage emanating from Smith and the vehicle. The odor was more pronounced when Smith was speaking. In Leach's opinion, Smith was intoxicated and impaired. Based on the evidence, this is not "the exceptional case in which the evidence weighs heavily against the conviction." *See id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Therefore, the convictions were not against the manifest weight of the evidence.

**{¶40}** In his final two assignments of error, Smith contends that the trial court erred in imposing sanctions on the traffic and using-weapon-while-intoxicated convictions in the sentencing entry that were not announced during the sentencing.

The state concedes the error. Accordingly, I would sustain the third assignment of error and remand the cause to the trial court for a resentencing on those charges.

Please note:

The court has recorded its own entry on the date of the release of this opinion.