[Cite as *State v. Walker*, 2024-Ohio-6079.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-240224 |
| | | C-240225 |
| Plaintiff-Appellee, | : | C-240226 |
| | | TRIAL NOS. B-2303205 |
| vs. | : | B-2003478 |
| | | B-2302148-B |
| MARK WALKER, | : | |
| Defendant-Appellant. | : | |
| | | *O P I N I O N* |
| | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: December 31, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Following guilty pleas, defendant-appellant Mark Walker was convicted on six felony counts across three separate cases. Walker now appeals, arguing (1) that one of his convictions was invalid because the State failed to recite adequate facts at his plea hearing, (2) that his guilty pleas were involuntary because the trial court misstated his aggregate maximum sentence during the plea colloquy, and (3) that the record did not support the trial court's sentences.

{¶2} However, as we explain below, (1) the prosecution need not have recited *any* facts at the plea hearing, (2) Walker was not prejudiced by the trial court's misstatement during his plea colloquy, and (3) an appellate court may not modify or vacate a sentence based on its view that the sentence is not supported by the record. We therefore overrule all three of Walker's assignments of error and affirm his convictions.

## I. BACKGROUND

{¶3} Walker was indicted on a total of six felony counts in three separate cases. Although Walker initially pled not guilty in each case, he eventually pled guilty as charged to all six counts. He now appeals his convictions to this court, and we have consolidated the cases on appeal.

{¶4} In the case numbered C-240224, Walker appeals his convictions for two counts of forgery in violation of R.C. 2913.31(A)(3) and one count of theft by deception in violation of R.C. 2913.02(A)(3). These charges resulted from two incidents in which Walker sought to cash fraudulent checks—one successful, one not.

{¶5} In the case numbered C-240225, Walker appeals his conviction for possession of fentanyl in a quantity of less than one gram, in violation of R.C. 2925.11(A).

{¶6} And in the case numbered C-240226, Walker appeals his convictions for one count of receiving stolen property and one count of theft in violation of R.C.2913.51(A) and 2913.02(A)(1), respectively. These charges arose after Walker and another individual stole books worth $26,300 from D.W., an individual who had provided the pair with lodging, and resold them at local bookstores. Walker subsequently apologized to D.W. and helped retrieve some, but not all, of the books.

{¶7} At Walker's plea hearing, the trial court engaged in a Crim.R. 11 plea colloquy, and the State read facts into the record for each charge. The trial court accepted Walker's guilty pleas and scheduled a sentencing hearing.

{¶8} At the sentencing hearing, the trial court heard from Walker and D.W., the victim of the book-theft offenses. D.W. requested restitution for the bookstores, who had returned his stolen books to him at a loss, but asked that Walker receive no prison term for the stolen books. The court also considered the probation office's presentence-investigation ("PSI") report, along with written statements from D.W., the arresting officers, and the victim of the check-cashing offenses.

{¶9} The trial court ultimately imposed one-year sentences on all charges (minus the 54 days Walker had served), with all six sentences to run concurrently. Walker expressed frustration when his sentences were announced, asserting, "I should have just took all this to trial. I wasn't even guilty on none of this." After all the information about his sentences had been provided, Walker declared, "I want to appeal it immediately. I was promised probation. That's the only reason why I pled guilty. I would never have taken it. You know, I was promised probation."

## II. SUFFICIENCY OF THE STATE'S FACTUAL RECITATIONS

{¶10} In his first assignment of error, Walker contends that by failing to recite sufficient facts into the record at his plea hearing, the State failed to carry its burden

3

to satisfy all the elements necessary to convict him of fentanyl possession. Thus, Walker contends, this court should reverse his conviction and discharge him from further prosecution on that count.

{¶11} The State's complete recitation of the facts underlying the fentanyl-possession offense was as follows:

> Your Honor, with regard to the case at B2003478, during warrant service from the Cincinnati Police Department, had some form of an arrest warrant for the Defendant. He was found to be in possession of a bindle of heroin less than bulk.

Walker argues that the State failed to recite (1) the name of the offense, (2) the level of the offense, or (3) any mention of the venue where the unnamed offense had occurred. He further notes (4) that the controlled substance named in the State's recitation of facts (heroin) did not match the substance named in his indictment (fentanyl).

{¶12} In an ordinary, posttrial context, we would assess the sufficiency of the State's evidence by asking whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *See State v. Jones*, 2021-Ohio-3311, ¶ 16.

{¶13} But Walker did not go to trial; he pled guilty. A guilty plea, if valid, constitutes "a complete admission of the defendant's guilt that removes any issues of factual guilt from the case." *State v. Allen*, 2016-Ohio-5258, ¶ 17 (1st Dist.); *accord* Crim.R. 11(B)(1) ("The plea of guilty is a complete admission of the defendant's guilt."). A valid guilty plea waives "all nonjurisdictional defects for the purpose of future proceedings." *State v. Niepsuj,* 2008-Ohio-1050, ¶ 7 (9th Dist.), citing *State v. Fitzpatrick*, 2004-Ohio-3167, ¶ 78. This includes the defendant's "'right to present manifest-weight-of-the-evidence or sufficiency-of-the-evidence attacks against his

convictions.'" *State v. Grate*, 2020-Ohio-5584, ¶ 111, quoting *State v. Dalton*, 2012-Ohio-3386, ¶ 7 (2d Dist.); *accord State v. Young*, 2019-Ohio-134, ¶ 11 (1st Dist.) (noting that "a guilty plea waives a sufficiency challenge").

**{¶14}** Walker contends that our recent decision in *State v. Schuster*, 2023-Ohio-3038 (1st Dist.), stands for the proposition that the State's failure to recite sufficient facts during a plea hearing constitutes grounds for reversal. But Walker's argument ignores the context of *Schuster*, and consequently reads its holding much too broadly. Unlike Walker, who pled guilty, the defendant in *Schuster* entered a plea of "no contest." *See id.* at ¶ 4. While a guilty plea "is a complete admission of the defendant's guilt," a "plea of no contest is *not* an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint." (Emphasis added.) Crim.R. 11(B)(1), (2). Thus, at least theoretically, a judge may enter a judgment of not guilty for a defendant who entered a voluntary plea of "no contest." *See, e.g., City of Girard v. Giordano*, 2018-Ohio-5024, ¶ 18, discussing *Springdale v. Hubbard*, 52 Ohio App.2d 255 (1st Dist. 1977).

**{¶15}** Further, while Walker pled guilty to a felony, the defendant in *Schuster* pled to a misdemeanor and was therefore entitled to the unique procedural protections of R.C. 2937.07. *See Schuster* at ¶ 17. That statute offers misdemeanor defendants an additional "level of procedural protection," beyond that provided by Crim.R. 11. *Giordano* at ¶ 20. It states, in relevant part, that a judge accepting a plea of "guilty" or "no contest" in a misdemeanor case "shall call for an explanation of the circumstances of the offense . . . unless the offense to which the accused is pleading is a minor misdemeanor," in which case the call for an explanation is optional. R.C. 2937.07. And if the defendant pleads no contest, then R.C. 2937.07 permits the trial court to "make a finding of guilty or not guilty from the explanation of the circumstances of the

offense." *Id*. Thus, in *Schuster*, this court determined that the prosecution's "explanation of the circumstances" did not include facts to support an element of the offense. *Schuster* at ¶ 20-21. And, because the defendant in *Schuster* had pled "no contest" and had not otherwise acknowledged his factual guilt for the acts charged in the complaint, we reversed the trial court's judgment finding him guilty. *Id*. at ¶ 21.

**{¶16}** But here, Walker pled guilty to a felony. As the Ohio Supreme Court has acknowledged, "no [explanation-of-circumstances] requirement exists in felony cases." *Giordano* at ¶ 19. Rather, once a trial court has properly accepted a defendant's voluntary plea of no contest to an "'indictment, information, or complaint [that] contains sufficient allegations to state a felony offense . . . , the court must find the defendant guilty.'" *Id*., quoting *State v. Bird*, 81 Ohio St.3d 582 (1998), syllabus.

**{¶17}** The same principle applies with even greater force to guilty pleas. *See State v. Bowen*, 52 Ohio St.2d 27, 28 (1977), quoting *Kercheval v. United States,* 274 U.S. 220, 223 (1927) (describing how a "'plea of guilty . . . is itself a conviction,'" and, "'[l]ike a verdict of a jury it is conclusive'"). Indeed, even in the context of misdemeanor pleas, where an explanation of circumstances is mandated, R.C. 2937.07 gives the trial court no authority to acquit a defendant who has entered a voluntary plea of guilty (rather than "no contest") to a valid complaint. And although the trial court "may refuse to accept a plea of guilty or no contest" in a felony case, Crim.R. 11(C)(2), it may *not* acquit a defendant whose guilty plea it has properly accepted, unless and until such plea is properly withdrawn. *See* Crim.R. 11(B)(3); Crim.R. 32.1; *see also State v. Miller*, 2021-Ohio-2424, ¶ 15 (1st Dist.) ("[O]nce a trial court accepts a guilty plea, it may not sua sponte withdraw the plea under Crim.R. 32.1.").

**{¶18}** Walker also cites several cases in which this court has reversed a conviction for failure to prove venue. *See State v. Smith*, 2024-Ohio-2189, ¶ 1 (1st

Dist.) (reversing conviction for failure to prove venue "[f]ollowing a bench trial"); *State v. Sullivan,* 2014-Ohio-3112, ¶ 11 (1st Dist.) (same); *State v. Gardner*, 42 Ohio App.3d 157, 157 (1st Dist. 1987) (reversing based on State's failure to prove venue after defendant was "convicted . . . in a bench trial"). But these cases are inapposite, as all concern appeals from convictions following bench trials, where evidentiary-sufficiency arguments are fair game, rather than appeals from convictions upon guilty pleas, where they are not.

**{¶19}** Thus, Walker's attempt to challenge the sufficiency of the State's explanation of circumstances must fail. In a felony case like Walker's the trial court was not required to demand any such explanation from the State in the first instance. And in any event, when Walker entered a voluntary guilty plea to a valid felony indictment, he waived his right to put the State to its proof, and the trial court was obligated to adjudge him guilty. We therefore overrule Walker's first assignment of error.

### III. VOLUNTARINESS OF WALKER'S GUILTY PLEAS

**{¶20}** In his second assignment of error, Walker argues that his pleas were not "knowingly, intelligently, or voluntarily entered pursuant to Crim.R. 11," because the trial court "failed to inform him of the maximum penalty" by misstating the maximum aggregate prison term he could face, should all his sentences run consecutively. We review the voluntariness of a defendant's guilty plea de novo. *State v. Davis*, 2024-Ohio-2793, ¶ 15 (1st Dist.).

**{¶21}** "Because a guilty plea operates as a waiver of several constitutional rights, the validity of a guilty plea turns on whether that plea was done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." (Cleaned up.) *State v. Davis*, 2023-Ohio-4389, ¶ 7 (1st

7

Dist.); *see Boykin v. Alabama*, 395 U.S. 238 (1969). "Crim. R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). The Ohio Supreme Court has held that Crim.R. 11 "fully encompasses those procedural requirements established by the United States Constitution." *State v. Johnson*, 40 Ohio St.3d 130, 133 (1988), citing *State v. Stewart*, 51 Ohio St.2d 86, 88 (1977).

**{¶22}** When appellants challenge the voluntariness of their pleas under Crim.R. 11, "reviewing courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy." *State v. Clark*, 2008-Ohio-3748, ¶ 30.

**{¶23}** This analysis includes determining whether the trial court adequately complied with Crim.R. 11's *constitutional* requirements, as well as its *nonconstitutional*, or rule-based requirements. The constitutional requirements are generally captured by Crim.R. 11(C)(2)(c) and ensure that the trial court has explained to the defendant the panoply of rights and protections he waives by pleading guilty. *See State v. Miller*, 2020-Ohio-1420, ¶ 17; *State v. Dangler*, 2020-Ohio-2765, ¶ 14 ("We have identified these constitutional rights as those set forth in Crim.R. 11(C)(2)(c) . . . ."). The nonconstitutional requirements, on the other hand, are listed in Crim.R. 11(C)(2)(a) and (b). *Dangler* at ¶ 14. These provisions require the trial court to provide information and make determinations that help to ensure the defendant's decision to plead is knowing, intelligent, and voluntary in a more general sense.

**{¶24}** Walker contends that the trial court misstated the maximum aggregate sentence he faced during his plea colloquy, and that this misstatement violated the

maximum-penalty provision of Crim.R. 11(C)(2)(a). He argues that this error constituted a complete failure to comply with Crim. R. 11, or, in the alternative, that it constituted a prejudicial failure to "substantially comply" with Crim.R. 11(C)(2)(a).

**{¶25}** In discussing this latter point, Walker's brief understandably employs language found in many of our recent cases, in which we have restated the old precept that "with regard to nonconstitutional rights . . . a trial court need only *substantially comply* with the substance of Crim.R. 11(C)." (Emphasis added.) *See State v. Cook*, 2024-Ohio-4771, ¶ 32 (1st Dist.); *see also*, *e.g.*, *State v. Wilson*, 2024-Ohio-1290, ¶ 15 (1st Dist.); *State v. Dailey*, 2024-Ohio-3166, ¶ 9 (1st Dist.); *State v. Harris*, 2024-Ohio-910, ¶ 13 (1st Dist.).

**{¶26}** We must acknowledge, however, that our language in these cases has fallen out of step with the current state of the law.[1] In *Dangler*, 2020-Ohio-2765, the Ohio Supreme Court specifically eschewed such "substantial compliance" or "tiers of compliance" regimes, repudiating and clarifying language in its prior opinions. *Id.* at ¶ 17. And post-*Dangler*, the Court has not walked this shift back: no Ohio Supreme Court decision since has applied substantial compliance in the Crim.R. 11(C) context. *See*, *e.g.*, *State v. Tancak*, 2023-Ohio-2578, ¶ 17 (making no mention of "substantial compliance").

**{¶27}** We therefore take this opportunity to clarify our own Crim.R. 11 analysis and bring it in line with the Supreme Court's, by recognizing "that whether a trial court substantially complies with Crim.R. 11(C)(2) is no longer part of the analysis in reviewing a trial court's plea colloquy." *See State v. Rogers*, 2020-Ohio-4102, ¶ 15

---

[1] This district is not alone in continuing to use "substantial compliance" language in the last four years. *See*, *e.g.*, *State v. Carpenter*, 2023-Ohio-2838, ¶ 10 (4th Dist.); *State v. Tancak*, 2022-Ohio-880, ¶ 10 (9th Dist.).

(12th Dist.), citing *Dangler*; *see also*, *e.g.*, *State v. Poage*, 2022-Ohio-467, ¶ 11 (8th Dist.), quoting *Dangler* at ¶ 17 (reciting *Dangler*'s formulation of the Crim.R. 11 inquiry with no mention of substantial compliance).

**{¶28}** Thus, if we find that the trial court did not comply with a nonconstitutional provision of Crim.R. 11, then we jump straight to determining "whether the trial court *partially complied* . . . with the rule," or "*failed* to comply" with it entirely. (Emphasis sic.) *Clark*, 2008-Ohio-3748, at ¶ 32; *accord State v. Veite*, 2021-Ohio-290, ¶ 16 (1st Dist.). If the trial court's advisement amounted to a complete failure to comply with the rule, then the defendant's plea will be deemed per se involuntary. *See Clark* at ¶ 32; *Veite* at ¶ 16-17; *Dangler* at ¶ 15. Otherwise, if the trial court partially complied, the defendant must show that the error prejudiced his decision to plead guilty before it can be overturned. *See Dangler* at ¶ 16.

**{¶29}** In the maximum-sentence context, "a complete failure involves a trial court's complete omission in advising [the defendant] about a distinct component of the maximum penalty." (Cleaned up.) *Cook*, 2024-Ohio-4771, at ¶ 34 (1st Dist.). Put another way, a trial court completely fails to comply with Crim.R. 11(C)(2)(a) when it neglects to inform a defendant about a *class* of penalties they may suffer. Thus, courts have found a complete failure to comply with the maximum-penalty provision where the trial court utterly fails to inform a defendant that they may be subject to a fine, *Rogers* at ¶ 23, or to postrelease control, *State v. Sarkozy*, 2008-Ohio-509, ¶ 22. And this court recently held that a trial court completely failed to comply with Crim.R. 11(C)(2)(a) when it neglected to "personally address the defendant and inform him of the" maximum prison term he faced. *Wilson*, 2024-Ohio-1290, at ¶ 17 (1st Dist.).

**{¶30}** But when "a trial court mentions a component of the maximum penalty during the plea colloquy, even if the trial court's advisement is incomplete or even

inaccurate, the trial court does not completely fail to comply with Crim.R. 11(C)." *Cook* at ¶ 34, citing *State v. Harris*, 2021-Ohio-1431, ¶ 22 (2d Dist.). Rather, in such a case the trial court is deemed to have *partially* complied with Crim.R. 11(C). Thus, in the postrelease-control context, the Ohio Supreme Court has described how even a trial court that "misinform[s]" a defendant "about the length of his term" or about "whether postrelease control was mandatory or discretionary," nevertheless partially complies with Crim.R. 11(C)(2)(a). *Sarkozy* at ¶ 22.

**{¶31}** Finally, where the trial court has partially complied with the rule's nonconstitutional dictates, we must assess whether its partial deficiency had "a prejudicial effect" on the defendant. *See Clark*, 2008-Ohio-3748, at ¶ 32. To satisfy this prejudice requirement, a defendant must show that, but for the violation of Crim.R. 11, they would not have pled guilty. *See Sarkozy* at ¶ 20. If the defendant was prejudiced, then his plea must be vacated as involuntary under Crim.R. 11.

**{¶32}** In the case before us, Walker contends that the trial court failed to comply with the maximum-penalty provision of Crim.R. 11(C)(2)(a), which prohibits the trial court from accepting a guilty plea without first "addressing the defendant personally" and "determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges *and of the maximum penalty involved*." (Emphasis added.) In *State v. Johnson*, the Ohio Supreme Court held that the then-current version of this provision required a trial court to inform a criminal defendant of the maximum sentence he faced *for each charge* to which he pled, but did not require the court to inform him that those sentences might run consecutively. *Johnson*, 40 Ohio St.3d at 134. This reasoning has led courts to the further conclusion that a trial court need not inform a defendant of the total aggregate term that could result from multiple charges run consecutively, only their individual maxima. *See, e.g.,*

11

*Poage*, 2022-Ohio-467, at ¶ 13 (8th Dist.).

**{¶33}** We note, however, that the current status of the *Johnson* rule is unclear. The court rooted its holding in *Johnson* firmly in the then-current text of Crim.R. 11, which employed singular terms that commanded trial courts to ensure the defendant understood "'*the* nature of *the* charge and of *the* maximum penalty involved.'" (Emphasis sic.) *Johnson* at 133, quoting previous Crim.R. 11(C)(2)(a). This singular language, the Court held, meant that each "plea" corresponded to an individual charge, and that compliance with Crim.R. 11(C)(2)(a)—including with the maximum-penalty provision—should be assessed on a charge-by-charge basis. *Johnson* at 133.

**{¶34}** However, when Ohio's Rules of Criminal Procedure were amended ten years after *Johnson*, the singular "charge" in Crim.R. 11(C)(2)(a) was transformed into the plural "charges." *See* current Crim.R. 11(C)(2)(a); 83 Ohio St.3d xciii, cix (effective July 1, 1998); *State v. Bishop*, 2018-Ohio-5132, ¶ 15 (plurality opinion). As a plurality of the Ohio Supreme Court recognized in *State v. Bishop*, the text of Crim.R. 11(C) today suggests "that a single plea can now apply to multiple charges." *Id.* And, as Justice Kennedy acknowledged without rebuttal in her *Bishop* dissent, if "making the word 'charge' plural" effected "a substantive change" in the Rule's meaning, then the 1998 amendment effectively abrogated the holding of *Johnson*. *Bishop* at ¶ 47 (Kennedy, J., dissenting). Just last year, Justice Donnelly, dissenting from a denial of review, noted that this question remained unsettled. *State v. Berry*, 2023-Ohio-3288, ¶ 5 (Donnelly, J., dissenting from denial of review).

**{¶35}** This court has yet to squarely address the effect of the 1998 amendments on our application of Crim.R. 11(C)(2)(a), though our cases have generally continued to apply the *Johnson* rule without addressing the textual change. *See, e.g.*, *State v. Clark*, 2002-Ohio-3135, ¶ 5-8 (1st Dist.), *overruled on other grounds*

*by State v. Brown*, 2002-Ohio-5983 (1st Dist.); *State v. Cook*, 2013-Ohio-5449, ¶ 46 (1st Dist.); *State v. Mack*, 2015-Ohio-1430, ¶ 24-25 (1st Dist.). Our sister districts to have confronted the issue have, for various reasons, rejected the argument that the amendment abrogated *Johnson*'s rule. *See*, *e.g.*, *State v. Whitman*, 2021-Ohio-4510, ¶ 18-33 (6th Dist.); *State v. Berry*, 2023-Ohio-605, ¶ 11-16 (8th Dist.), *not accepted for review*, 2023-Ohio-3288; *State v. Roberts*, 2019-Ohio-4393, ¶ 3-8 (9th Dist.); *State v. Willard*, 2021-Ohio-2552, ¶ 63-73 (11th Dist.).

**{¶36}** But no party in this case has expressly challenged *Johnson*'s continuing vitality. And, in any event, resolution of the *Johnson* question is unnecessary in this case, because we hold that Walker's plea is valid regardless of our answer to the *Johnson* question.

**{¶37}** To determine whether the trial court complied with Crim.R. 11(C), we begin by considering its colloquy with Walker at his plea hearing. In that colloquy, the trial court correctly informed Walker of the sentence ranges for each of the charges to which he was pleading guilty. However, the record reveals that there was some confusion regarding the cumulative term Walker could face:

> THE COURT: . . . So if [all the charges] ran one after the other consecutively, that would be six?
>
> [DEFENDANT'S COUNSEL]: Seven.
>
> THE COURT: Seven? I'm up to nine. If they all ran consecutively, the worst that could happen would be nine years in prison. Do you understand all of that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you still wish to plead guilty?
>
> THE DEFENDANT: Yes.

Contrary to the trial court's assertions, Walker's counsel had the math correct. Walker faced 6 to 12 months for each of his four fifth-degree felony charges, and 6 to 18 months for each of his two fourth-degree felony charges. If Walker received the maximum sentence on each count, and if all those sentences ran consecutively, Walker could have faced a cumulative seven years' incarceration as a result of his pleas—not nine years, as the trial court suggested.

**{¶38}** Pursuant to *Johnson* we must determine whether the trial court correctly informed Walker of the maximum sentence he could face on each of his six counts. Because it did, the trial court complied with the maximum-penalty requirement of Crim.R. 11(C)(2)(a) under *Johnson*.

**{¶39}** But even if we assumed, without deciding, that the 1998 amendments abrogated *Johnson*'s holding and required the trial court to inform Walker of the maximum aggregate sentence he could face after pleading guilty, Walker's pleas would still stand. Although the trial court clearly miscalculated, we hold that it did not completely fail to advise Walker regarding some "'distinct component of the maximum penalty.'" *See Cook*, 2024-Ohio-4771, at ¶ 34 (1st Dist.), quoting *Harris*, 2021-Ohio-1431, at ¶ 22 (2d Dist.). By discussing Walker's maximum potential prison exposure—however inaccurately or incompletely—the trial court at least partially complied with the rule. We therefore could not vacate Walker's pleas unless he demonstrated prejudice.

**{¶40}** We further hold that Walker has not shown that the trial court's alleged error (if error it was) prejudiced him. The trial court's misstatement that Walker's maximum aggregate sentence was "nine years in prison," rather than seven, suggested that Walker's pleas could subject him to a significantly longer prison term than he legally could have received. Walker bears the burden of demonstrating that, but for

the threat of those additional two years, he would not have pled guilty. But Walker has offered nothing to satisfy that burden. Nor is his the rare case in which prejudice is evident from the record, as when a trial court imposes a sentence exceeding the maximum term threatened in the plea colloquy. *See, e.g., Davis*, 2023-Ohio-4389, at ¶ 17 (1st Dist.), quoting *State v. Tackett*, 2023-Ohio-2298, ¶ 22 (8th Dist.) ("'When a defendant receives a sentence that exceeds what the trial court previously informed the defendant was the maximum penalty, the prejudice is apparent on its face.'").

**{¶41}** Walker argues, counter-intuitively and without explanation, that he would not have pled guilty and would have taken his chances at trial had he known that the maximum period of imprisonment he risked following his plea was seven instead of nine years. But Walker's postsentencing remarks to the court belie this contention. Immediately after the court announced Walker's sentences—one year on all charges, with all sentences to run concurrently—Walker protested that he had been "promised probation" and explained, "That's the only reason why I pled guilty. I would never have taken it. You know, I was promised probation." This on-the-record assertion undermines Walker's argument to this court that the trial court's miscalculation prejudiced his decision to plead, and Walker offers no explanation for this inconsistency. If Walker was indeed "promised probation," then the maximum aggregate sentence he faced would have made little or no difference to his decision to plead guilty.

**{¶42}** We therefore hold that, even assuming the trial court failed to comply with Crim.R. 11 by misstating the maximum aggregate sentence, Walker did not meet his burden of demonstrating that he suffered prejudice from that error. Thus, Walker's challenge to the voluntariness of his guilty pleas is without merit, and we overrule his second assignment of error.

15

## IV. VALIDITY OF WALKER'S SENTENCE

**{¶43}** In his third and final assignment of error, Walker contends that the "record [did] not support sentencing [him] to a prison term of 1 year in prison." He argues that the "1 year prison sentence imposed by the trial court upon [him] for Felony 4 and Felony 5 nonviolent offenses was clearly and convincingly not supported by the record."

**{¶44}** This court has limited jurisdiction to review a criminal defendant's sentence. Unless otherwise provided by law, that jurisdiction comes from R.C. 2953.08(A), (B), or (C), and the scope of our review is governed by R.C. 2953.08(G). Although Walker does not specify his basis for invoking this court's jurisdiction to review his aggregate sentence, his brief does contend, without citation, that his aggregate sentence was "contrary to law." We therefore construe Walker's argument as a challenge under R.C. 2953.08(A)(4), which contains similar "contrary to law" language. And because Walker does not challenge any of the specific findings referenced in R.C. 2953.08(G)(2)(a), we may alter or vacate his sentence only if we "clearly and convincingly find" that it "is otherwise contrary to law." *See* R.C. 2953.08(G)(2)(b).

**{¶45}** A "sentence is not clearly and convincingly contrary to law" so long as the sentencing court (1) "considers the R.C. 2929.11 and 2929.12 factors," (2) "properly imposes postrelease control," and (3) "imposes a sentence within the statutory range." *State v. Hart*, 2024-Ohio-4552, ¶ 12 (1st Dist.). In assessing whether a sentencing court considered the relevant factors, we must be careful not to ask whether the record supported the imposition of a particular sentence under those factors. *See State v. Jones*, 2020-Ohio-6729, ¶ 32 and 39; *State v. Smith*, 2024-Ohio-2187, ¶ 14 (1st Dist.). To this end, we start from the "well-settled" presumption "that the trial court

considered R.C. 2929.11 and 2929.12, absent a clear showing to the contrary." *Hart* at ¶ 12. Thus, a trial court need not make any "specific findings on the record to evince the requisite consideration of the applicable seriousness and recidivism factors." *Id.*

**{¶46}** Walker's primary complaints regarding his more-than-minimum sentence are (1) that the trial court failed to consider the lack of harm caused by his offenses as a mitigating factor under R.C. 2929.12(C)(3) undermined by no aggravating circumstance in R.C. 2929.12(B), (2) that the trial court "did not appear to give any consideration of his extensive mitigation information," (3) that the trial court disregarded the recommendations in the presentence-investigation (PSI) report, (4) that the trial court undervalued the testimony of one of Walker's victims, who asked the court not to incarcerate Walker, and (5) that the trial court generally failed to consider Walker's circumstances, such as his education, his "mostly nonviolent criminal record," and the fact that "his life problems [were] due primarily to drug addiction, for which he was working on healing" and receiving treatment. Walker does not contend that the trial court imposed sentences outside the legal range or that it improperly imposed postrelease control. Nor does he suggest that the trial court considered any impermissible factors. *Compare Smith* at ¶ 14, citing *State v. Brunson*, 2022-Ohio-4299, ¶ 69, and *State v. Sanon*, 2023-Ohio-2742, ¶ 74 (1st Dist.).

**{¶47}** Nor do Walker's arguments allege that the trial court ignored the sentencing factors altogether or point to any evidence to that effect. Instead, most of Walker's claims suggest that the trial court gave too much or too little weight to one or more statutory factors or pieces of evidence. Such weight-and-sufficiency arguments, however, are prohibited under *Jones* and R.C. 2953.08. *See Jones* at ¶ 42 ("Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court . . . ."). And to the

extent Walker argues that we should infer a failure to consider certain mitigating factors from the trial court's failure to address them on the record, his argument lacks merit. Silence does not rebut the presumption that the trial court considered all relevant factors. *See Hart* at ¶ 12.

**{¶48}** Because Walker has not "clearly and convincingly" demonstrated that his sentences were "contrary to law," as required by *Jones* and R.C. 2953.08(G)(2)(b), we overrule his third assignment of error.

\* \* \*

**{¶49}** Having thus overruled Walker's three assignments of error, we affirm his convictions.

Judgments affirmed.

**BERGERON, P.J.**, and **WINKLER, J.**, concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.