[Cite as *State v. Smith*, 2025-Ohio-1548.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114209 |
| v. | : | |
| TAHAD SMITH, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 1, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-688395-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Omar Siddiq, Assistant Prosecuting Attorney, *for appellee*.

Scott J. Friedman, *for appellant*.

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Tahad Smith ("Smith"), appeals his convictions for kidnapping, felonious assault, strangulation, and domestic violence, arguing that his plea should be vacated because the trial court failed to properly advise him of the

indefinite sentence he faced under the Reagan Tokes Law. Although the trial court did not fully comply with Crim.R. 11(C)(a), we find that Smith did not demonstrate that he was prejudiced by the trial court's noncompliance. Therefore, the judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} In January 2024, Smith was charged in a six-count indictment alleging two counts of rape, felonies of the first degree; one count of kidnapping, a felony of the first degree; one count of felonious assault, a felony of the second degree; one count of strangulation, a felony of the fifth degree; and one count of domestic violence, a misdemeanor of the first degree. The charges stem from Smith allegedly assaulting the victim over a four-hour period and then returning the next day and forcing the victim to perform oral sex on him twice while Smith was on Face-Time with a friend. The victim alleged that Smith choked her, bit her, punched her repeatedly in the face and body, and gouged his fingers into her eyes, which caused subconjunctival hemorrhaging in both eyes. (Tr. 53.)

{¶ 3} In June 2024, Smith pled guilty to kidnapping, felonious assault, strangulation, and domestic violence as charged in the indictment with the agreement that the offenses were not allied offenses of similar import. In exchange, the State dismissed the rape counts.

{¶ 4} At sentencing, Smith apologized to the court and requested leniency. Smith's mother also spoke on his behalf. In addition, the victim asked the court for leniency for Smith. The State addressed the court and gave a brief description of the

crimes committed and the injuries sustained by the victim. The State presented pictures of the victim's injuries, the emergency department report, and a jail call from Smith to the victim. In addition, the State read into the record the victim's responses to the domestic violence form, which included "that the physical violence has increased in severity over the past year; that [Smith] controls most of her daily activities; that [Smith] tried to kill her; that [Smith] threatened to kill her; that [Smith] has used a weapon or threatened her with a weapon, a lethal weapon; that [Smith] tried to strangle her; that [Smith] has strangled her multiple times; that she believes [Smith] is capable of killing her." (Tr. 52.) The State asked for a "lengthy" prison sentence. (Tr. 55.)

{¶ 5} The trial court stated that "the nature of the offenses, . . . are, frankly, shocking." (Tr. 55.) The court sentenced Smith to 10 to 15 years in prison on the kidnapping count, 8 years in prison on the felonious assault count, 12 months in prison on the strangulation count, and 6 months in county jail, suspended, on the domestic violence count. The sentences were ordered to run concurrently with each other for a total of 10 to 15 years in prison. The trial court advised Smith of post-release control and waived all fines and court costs.

{¶ 6} Smith appeals and raises the following assignment of error for review:

[Smith's] plea was not entered knowingly, intelligently, and voluntarily because the trial court failed to properly advise [Smith] of the potential indefinite sentences under the Reagan Tokes Law.

## II. Law and Analysis

{¶ 7} In his sole assignment of error, Smith asserts that the trial court failed to explain "the nature of the minimum and maximum sentences under Reagan Tokes, or the nature of indefinite sentences." (Smith's brief, p. 7.) Smith contends that his plea must be vacated, because it was not knowingly, intelligently, and voluntarily entered. We disagree.

{¶ 8} It is axiomatic that a defendant's plea must be entered knowingly, intelligently, and voluntarily for the plea to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). In fact, "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). The purpose of Crim.R. 11(C) is to require the trial court to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Poage*, 2022-Ohio-467, ¶ 9 (8th Dist.), citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). On appeal, we review the trial court's adherence to Crim.R. 11(C) de novo and consider the totality of the circumstances to determine whether the trial court complied with the dictates of Crim.R. 11(C). *State v. Foster*, 2024-Ohio-5919, ¶ 8-9 (8th Dist.), citing *State v. Cardwell*, 2009-Ohio-6827, ¶ 26 (8th Dist.).

{¶ 9} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the

trial-court proceedings and that he was prejudiced by that error." *State v. Dangler*, 2020-Ohio-2765, ¶ 13, citing *State v. Perry*, 2004-Ohio-297, ¶ 14-15, and *State v. Stewart*, 51 Ohio St.2d 86, 93 (1977); Crim.R. 52. A limited exception exists when the trial court fails to explain the constitutional rights waived by the defendant when pleading guilty as outlined in Crim.R. 11(C)(2)(c). *State v. Foster*, 2024-Ohio-5919, ¶ 10 (8th Dist.), citing *Dangler* at ¶ 14, citing *State v. Clark*, 2008-Ohio-3748, ¶ 31, and *State v. Veney*, 2008-Ohio-5200, syllabus. In addition, "[a] trial court's complete failure to comply with a portion of Crim.R. 11(C) also eliminates the defendant's burden to show prejudice." *Id.* at ¶ 10, citing *Dangler* at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22.

{¶ 10} "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Dangler* at ¶ 16, citing *Nero* at 108. This includes instances where the trial court fails to fully cover the "nonconstitutional" aspects of the plea colloquy. *Id.* at ¶ 14, citing *Veney* at ¶ 17 (distinguishing the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b) from the constitutional rights notifications required by Crim.R. 11(C)(2)(c)). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *Nero* at 108.

{¶ 11} The Ohio Supreme Court summarized appellate review of a trial court's compliance with Crim.R. 11(C) as follows:

[T]he questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?"

*Dangler* at ¶ 17.

{¶ 12} At issue in this case is Crim.R. 11(C)(2)(a) which requires the trial court to address the defendant personally, and "determine that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." Implicit in the "maximum penalty" analysis is R.C. 2929.144, which defines "maximum prison terms" under Senate Bill 201, "the Reagan Tokes Law," which became effective in March 2019. R.C. 2929.144(B) provides that first- and second-degree felonies that are qualifying offenses will be subject to an indefinite sentence. Smith contends that he was not properly advised of the maximum penalty because the trial court did not explain that he was subject to an indefinite sentence.

{¶ 13} Because Crim.R. 11(C)(2)(a) is a nonconstitutional right, Smith must demonstrate prejudice unless there is a complete failure on the trial court's part to advise Smith of the maximum penalty. *Dangler* at ¶ 16. Smith argues a complete failure by the court, when the trial court advised as follows:

THE COURT: Let me explain it, sir. You are facing a six-count indictment. Counts 1 and 2 both allege rape, each a felony of the first degree, punishable, if convicted, by three to 11 years in prison in annual increments plus one half of the imposed sentence, a potential total of up to 16 and a half years in prison and/or a fine of up to $20,000. Do you understand?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  If you'd been convicted of either of those two charges, you would also, by operation of state law, have been designated a sexual offender with various reporting requirements.  Do you understand?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  However, the State is willing to dismiss both of those charges if you plead guilty to the other four counts in the indictment.  Do you understand?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  Count 3 alleges kidnapping, also a felony of the first degree with the same range of penalties, but without the sexual offender designation that would follow if convicted on the rape charge.  Do you understand?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  Count 4 alleges felonious assault.  The charge is a felony of the second degree, punishable, if convicted, by two to eight years in prison in annual increments plus one half of the longest imposed sentence, a potential total of up to 12 years in prison and/or a fine of up to $15,000.  Do you understand?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  Count 5 alleges strangulation, a felony of the fifth degree, punishable, if convicted, by six to 12 months in prison inclusive in monthly increments and/or a fine of up to $2,500.  Do you understand?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT: Count 6 alleges domestic violence, a misdemeanor of the first degree . . . , punishable, if convicted, by up to six months in jail — that would be local incarceration, not prison — and/or a fine of up to $1,000. Do you understand?

THE DEFENDANT:  Yes, sir, Your Honor.

(Tr. 10-13.)

{¶ 14} Smith relies on three cases in support of his argument that the court's advisement was a complete failure to advise. These cases, however, are distinguishable, and we find Smith's reliance on them unpersuasive.

{¶ 15} In *State v. Tackett*, 2023-Ohio-2298 (8th Dist.), the trial court provided contradictory information during the plea colloquy about the potential maximum sentence, initially stating each underlying felonious assault offense was punishable "by a prison term of two to eight years in annual increments plus one-half the longest prison imposed prison sentence, a potential total of up to 12 years in prison[.]" *Id*. at ¶ 11. The court went on to say that "[w]orst-case scenario for you, sir, would be that I could impose a term of eight years in prison as to each count [of felonious assault] for then a total of 16 years." *Id*. at ¶ 11. The trial court also failed to state the convictions were eligible for an indefinite sentence pursuant to the Reagan Tokes Law. *Id*. at ¶ 14. The trial court initially sentenced Tackett to a definite sentence of eight years on each count to be served consecutively. The trial court then resentenced Tackett to an indefinite sentence of 16-18.5 years in prison, which reflected a sentence "two and one-half years more than the court had informed Tackett he could receive if he accepted the state's plea offer." *Id*. at ¶ 13. This court vacated the defendant's plea finding a complete failure to advise because of the contradictory advisements and the failure to inform Tackett that he was subject to an indefinite sentence under Reagan Tokes Law. This court found that the trial court's incorrect advisement of "the worst-case scenario," coupled with Tackett's sentence exceeding that "worst-case scenario," caused prejudice to

Tackett. In the instant case, Smith was not sentenced to a term exceeding the maximum penalty advisement, nor were the advisements contradictory.

{¶ 16} In *State v. Amin*, 2023-Ohio-3761 (11th Dist.), the trial court did not convey any information to the defendant regarding the maximum penalty involved and relied on the prosecutor's deficient and confusing statements regarding definite and indefinite sentences. *Id.* at ¶ 13. In *Amin*, the prosecutor stated: "The parties acknowledge that the defendant is subject to the following potential penalties: Count 1, Attempted Aggravated Arson, second degree felony. Prison. Definite prison between 2 and 8 years. There is a presumption for prison. There is no mandatory prison. Post-release control would be mandatory up to 3 years but not less than 18 months. This sentence would be subject to the Reagan Tokes law, so potential for indefinite prison term maximum up to 12 years." *Id.* at ¶ 10. The Eleventh District vacated the plea finding "that the trial court's advisement regarding the maximum penalty was wholly deficient inasmuch as it communicated contradictory information to Amin without any effort to explain the significance of definite and indefinite sentencing under the Reagan Tokes law." *Id.* ¶ 12. That is not the case here. Here, the trial court advised Smith directly and did not make contradictory statements regarding definite and indefinite terms.

{¶ 17} Finally in *State v. Hutsenpiller*, 2024-Ohio-3069 (11th Dist.), the Eleventh District found that the trial court failed to address the defendant personally when explaining the maximum penalty, as well as gave no explanation as to how a "maximum fixed term" of 8 years was consistent with a "possibility of an indefinite

term of up to 12 years." *Id.* ¶ 21. The discussion on the record was between the court and prosecutor without the court ever inquiring of the defendant whether he understood. The appellate court vacated Hutsenpiller's plea finding that "[n]either the court nor the prosecutor mentioned the applicable provisions of the Reagan Tokes Law that controlled the prison term. Nor did the trial court attempt to ascertain Hutsenpiller's understanding of the possible maximum term." *Id.* at ¶ 21. Again, that is not the case here. In the instant case, the trial court directly advised Smith and asked Smith repeatedly if he understood, to which Smith responded in the affirmative.

{¶ 18} As we stated in *State v. Berry*, 2023-Ohio-605 (8th Dist.), the "maximum penalty" referred to in Crim.R. 11(C)(2)(a) is for the single crime for which the plea is offered. *Id.* at ¶ 9, citing *State v. Johnson*, 40 Ohio St.3d 130 (1988). Further, "'a trial court properly complies with Crim.R. 11(C) by informing the defendant of the maximum sentences faced for each of the individual charged crimes.'" *State v. Poage,* 2022-Ohio-467, ¶ 13 (8th Dist.), quoting *Johnson* at 134. In addition, the trial court is not required to give the aggregate sentence, cumulative total, or the final possible number. *State v. Gooden*, 2021-Ohio-1192, ¶ 20 (8th Dist.) (Crim.R. 11(C) does not require the trial court to advise a defendant of the cumulative total of all prison terms for all the offenses at the time of the guilty plea.); *State v. Cobbledick*, 2020-Ohio-4744, ¶ 6 (8th Dist.) ("Under Ohio law, there is no requirement for the trial court to advise of the possibility that each individual sentence may be imposed consecutively, such that a plea can be considered as

involuntary in the absence of such an advisement."); *Berry* (this court rejected appellant's claim that the trial court failed to comply with Crim.R. 11 by not advising him of the maximum, aggregate prison term if the sentences were to be imposed consecutively).

{¶ 19} After reviewing the plea colloquy, we find that the trial court did not completely fail to advise Smith of the maximum penalty as required by Crim.R. 11(C)(2)(a). The record reveals that the trial court advised Smith of the maximum penalty for each count to which he would be pleading guilty. Further, the trial court accurately advised Smith of the maximum penalty he faced under the Reagan Tokes Law for his two qualifying offenses, kidnapping and felonious assault. Although the trial court did not specifically advise Smith that he was subject to an indefinite sentence, the trial court did advise Smith that his sentence would include "one half of the imposed sentence." An advisement by the trial court that Smith was subject to an indefinite sentence of up to five and one-half years would, however, be more complete. Nevertheless, unlike the advisements in *Tackett*, *Amin*, and *Hutsenpiller*, we find that the trial court's advisement here was not a complete failure.

{¶ 20} Having found that the trial court's advisement of the maximum penalty was not a complete failure, Smith is then required to demonstrate prejudice. *Dangler* at ¶ 16, citing *Nero* at 108. As previously stated, the test for prejudice is "'whether the plea would have otherwise been made.'" *Id.*, quoting *Nero* at 108.

{¶ 21} On appeal, Smith did not argue prejudice, nor did he argue that he would not have pled guilty had the trial court specifically advised him that he was subject to an indefinite sentence. Based on the record before us, we cannot say that Smith was prejudiced by the trial court's failure to specifically advise Smith that he was subject to an indefinite sentence. Therefore, we find that that Smith entered his plea knowingly, intelligently, and voluntarily.

{¶ 22} Accordingly, Smith's sole assignment of error is overruled.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
ANITA LASTER MAYS, J., CONCUR