[Cite as *State v. Berry*, 2023-Ohio-605.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111453 |
| v. | : | |
| LAWRENCE BERRY, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 2, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-638262-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Yasmine Hasan, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Jonathan Sidney, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Lawrence Berry ("Berry"), appeals from his guilty plea, contending that under the July 1, 1998 amendment of Crim.R. 11, a

defendant must be advised of the *aggregate*, maximum penalty they may receive as a result of a plea, rather than the maximum penalty the defendant may receive for *each* charge of the plea. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} In April 2019, Berry was charged in an eight-count indictment. Counts 1-2 charged him with aggravated vehicular homicide. Counts 3-6 charged him with aggravated vehicular assault.[1] Counts 7-8 charged him with operating a vehicle under the influence of alcohol.[2] The charges arise from a March 2019 car accident involving Berry, his girlfriend at the time, Janetta Foster ("Foster"), and Foster's two minor children at the time, G.P. and M.C. Berry was involved in an incident with another driver. Berry struck the other driver's car, causing Berry to lose control of his own car. Berry crashed through a fence and wrapped around a utility pole. Berry and Foster were ejected from the car and Foster died shortly thereafter. G.P. sustained a broken ankle and M.C. sustained a fracture of his femur, serious back injuries, and memory problems. Berry was driving while under the influence of alcohol and a suspended license. (Oct. 29, 2019, tr. 412-413).

{¶ 3} The matter proceeded to a jury trial on September 18, 2019. On the second day of trial, Berry entered into a guilty plea. Berry pled guilty to one count of aggravated vehicular homicide (Count 1), one count of aggravated vehicular

---

[1] Each of Counts 1-6 carried a furthermore clause that the offender was driving under a suspension.

[2] Each of Counts 7-8 carried a furthermore clause that Berry has been previously convicted or pled guilty to operating a vehicle under the influence of alcohol.

assault (Count 3), as amended to include both G.P. and M.C., and one count of operating a vehicle under the influence of alcohol (Count 7). Counts 2, 4, 5, 6, and 8 were nolled. The court referred Berry to the county probation department for a presentence investigation and report.

{¶ 4} At the sentencing hearing in October 2019, the trial court sentenced Berry to ten years in prison on Count 1 (aggravated vehicular homicide), seven years in prison on Count 3 (aggravated vehicular assault), and 180 days on Count 7 (operating a vehicle under the influence of alcohol). The trial court ordered that Counts 1 and 3 be served consecutively and ordered that Berry pay court costs and a fine in the sum of $875. The court ordered a lifetime suspension on Berry's driver's license on Count 1, a ten-year suspension on Count 3, and a three-year suspension on Count 7. The court also ordered six points to be assessed to Berry's driver's license.

{¶ 5} In April 2022, Berry filed a pro se motion for leave to file a delayed appeal and a pro se motion for appointment of counsel. This court granted Berry's motion for leave and appointed the Cuyahoga County Public Defender to represent Berry on appeal.

{¶ 6} Berry now appeals, raising the following assignment of error for review:

> **Assignment of Error:** Whether the trial court failed to comply with Crim.R. 11 by failing to determine that [Berry] understood the maximum penalty involved in the plea agreement prior to accepting his guilty plea.

## II. Law and Analysis

{¶ 7} Berry argues that the trial court failed to comply with Crim.R. 11 when it did not advise him of the maximum, aggregate prison sentence that could be imposed in the event the court ordered his individual sentences to be served consecutively. He contends that since the 1998 amendment, appellate courts across the state have been applying an obsolete version of Crim.R. 11 because the courts continue to rely on *State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), which predates the amendment.

### A. *State v. Johnson*

{¶ 8} In *Johnson*, the Ohio Supreme Court analyzed the pre-1998 amendment version of Crim.R.11, which provided that before accepting a guilty plea in a felony case, the trial court must "'[d]etermin[e] that [the defendant] is making the plea voluntarily, with understanding of the nature of *the charge* and of the maximum penalty involved, and, if applicable, that [the defendant] is not eligible for probation.'" (Emphasis added.) *Id.* at 132-133, quoting Crim.R. 11(C)(2)(a). The *Johnson* Court found that the "[f]ailure to inform a defendant who pleads guilty to more than one offense that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim. R. 11(C)(2), and does not render the plea involuntary." *Id.* at syllabus.

{¶ 9} The *Johnson* Court reasoned that neither the United States Constitution nor the Ohio Constitution requires a trial court to inform a defendant during his plea hearing of the maximum total of the sentences he faces or that the

sentences can be imposed consecutively. *Id.* at 133. Regarding Crim.R. 11, the Court considered the text of the rule itself and stated:

> A review of [Crim. R. 11(C)] indicates that it requires the trial court to explain before it accepts "the plea," "*the* nature of *the* charge and of *the* maximum penalty involved." (Emphasis added.) Crim. R. 11(C)(2)(a). Upon its face the rule speaks in the singular. The term "the charge" indicates a single and individual criminal charge. So, too, does "the plea" refer to "a plea" which the court "shall not accept" until the dictates of the rule have been observed. Consequently, the term "the maximum penalty" which is required to be explained is also to be understood as referring to a single penalty. In the context of "the plea" to "the charge," the reasonable interpretation of the text is that "the maximum penalty" is for the single crime for which "the plea" is offered. It would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding.

*Id.* at 133. The Court concluded that because the trial court in *Johnson* explained to the defendant the individual maximum sentences possible, his guilty plea was proper. *Id.*

## B. The July 1998 Amendment to Crim.R. 11

{¶ 10} The language relied upon by the *Johnson* Court to justify its holding, however, has been slightly amended. As the Ohio Supreme Court stated in *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 15, "Crim.R. 11(C)(2)(a) has been amended since *Johnson* so that a single plea can now apply to multiple charges, *see* 83 Ohio St.3d xciii, cix (effective July 1, 1998)." The relevant portion of Crim.R. 11 now provides that a trial court shall not accept a guilty plea in a felony case without first

[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the *charges* and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(Emphasis added.) Crim.R. 11(C)(2)(a).

### C. Maximum Penalty and Crim.R. 11 post-*Johnson* and the July 1998 Amendment

{¶ 11} Based on the analysis in *Johnson*, Berry contends that because the prior version of Crim.R. 11(C)(2)(a) governed singular pleas to singular charges, its reference to "the maximum penalty" necessarily referred to the singular penalty associated with a singular plea to a singular charge. Berry's argument, however, is not new.

{¶ 12} In *Bishop*, the Ohio Supreme Court began its plurality analysis by noting that Crim.R. 11(C)(2)(a) was amended since *Johnson* was decided. *Id.* at ¶ 15. The *Bishop* Court, however, did not articulate whether, or to what extent, the amendment of the rule (from "charge" to "charges") impacted its longstanding holding in *Johnson*. Instead, the Court distinguished *Johnson* based upon the fact that the defendant's felony sentence and the 12-month sentence attributable to his postrelease control violation were intertwined and were required to be served consecutively under R.C. 2929.141(A)(1). *Id.* at ¶ 17. Because a prison sentence imposed for a postrelease control violation must be served consecutively to prison sentences for new felony offenses that gave rise to the violation, the court found that the phrase "maximum penalty involved" in Crim.R. 11(C)(2)(a) includes the

postrelease control violation sentence. *Id.* Consequently, the Court found that the defendant must be notified of the fact that the sentences are required to be imposed consecutively at the time of the plea hearing on the new felony offense in order to satisfy Crim.R. 11(C)(2)(a). *Id.* at ¶ 21.

{¶ 13} Justice Kennedy's dissenting opinion in *Bishop* discusses the effect of the amendment by noting that

> Crim.R. 11(C)(2)(a) has been amended to require the trial court to ensure that the accused understands the nature of the "charges" and the maximum penalty involved. However, we amended the rule in 1998 — almost a decade after we decided *Johnson* — "in light of changes in terminology used in the criminal law of Ohio effective July 1, 1996," by Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2"), and the staff comment to the amendment does not indicate that making the word "charge" plural was intended to be a substantive change. 83 Ohio St.3d xciii, cxi. We do not make significant revisions to our procedural rules cryptically, and we have never held that our holding in *Johnson* has been abrogated by the amended rule.

*Id.* at ¶ 47.

{¶ 14} Justice Fischer's dissent also addressed the effect of the amendment to Crim.R. 11, stating that

> [w]hile we did interpret a prior version of Crim.R. 11(C)(2)(a) in *Johnson*, the plain language of the rule still demonstrates that "Crim.R. 11 applies only to the entry and acceptance of the plea," *Johnson* at 134, and that "the reasonable interpretation of the text is that 'the maximum penalty' is for the single crime [now "crimes"] for which 'the plea' is offered" (emphasis added.), *Id.* at 133. In *Johnson*, * * * [t]he court reviewed the plain language of former Crim.R. 11(C)(2)(a) and determined that "the maximum penalty involved" means the penalty for the "crime" for which "the plea" was offered, not that "the maximum penalty involved" means any and all possible future consequences of the plea.
>
> A plea of guilty is a complete admission of the defendant's guilt of the offense or offenses to which the plea is entered. Crim.R. 11(B)(1). * * *

Thus, a guilty plea is entered to a charged offense, and "the maximum penalty involved" is the maximum penalty for that offense to which the defendant pleads guilty and not additional or collateral possible punishments that are an indirect consequence of the guilty plea.

*Id.* at ¶ 73-74.

{¶ 15} Because the plurality in *Bishop* did not expressly overrule *Johnson* and for the reasons articulated in the dissents, we find that the change from "*charge*" to "*charges*" under the 1998 amendment to Crim.R. 11(C)(2)(a) did not disturb *Johnson*'s holding. As we noted in *State v. Nave*, 8th Dist. Cuyahoga No. 107032, 2019-Ohio-1123, while the plurality in *Bishop* distinguished *Johnson*, it did not overrule *Johnson* when it had an opportunity to do so. *Id.* at ¶ 11.

{¶ 16} Our continued application of the Ohio Supreme Court's holding in *Johnson* is consistent with prior decisions from this court as well as other Ohio appellate courts. In *Nave*, we acknowledged that

> [t]his court has followed *Johnson* on numerous occasions and concluded that Crim.R.11(C)(2)(a) does not require a trial court to advise a defendant of the potential for discretionary consecutive sentencing. *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 24 (8th Dist.), citing, among others, *State v. Dansby-East*, 2016-Ohio-202, 57 N.E.3d 450, ¶ 16-17 (8th Dist.), and *State v. Dotson*, 8th Dist. Cuyahoga No. 101911, 2015-Ohio-2392, ¶ 12. In *State v. Norman*, 8th Dist. Cuyahoga No. 91302, 2009-Ohio-4044, this court found that where a trial court is required to impose a sentence consecutively, the failure to advise the defendant of that fact constituted a failure to substantially explain the maximum penalty. *Id.* at ¶ 13. *See also State v. Abernathy*, 8th Dist. Cuyahoga No. 107123, 2018-Ohio-4414, ¶ 4. However, where the decision to impose consecutive sentences arises purely from the trial court's discretion under R.C. 2929.14(C)(4), such an advisement is not required. *See Johnson* at the syllabus; *Vinson* at ¶ 24-26.

*Id.* at ¶ 10. *See also State v. Cobbledick*, 8th Dist. Cuyahoga No. 108959, 2020-Ohio-4744, ¶ 6, *discretionary appeal not allowed*, 164 Ohio St.3d 1447, 2021-Ohio-3336, 173 N.E.3d 1238, ("Under Ohio law, there is no requirement for the trial court to advise of the possibility that each individual sentence may be imposed consecutively, such that a plea can be considered as involuntary in the absence of such an advisement."); *State v. Poage*, 8th Dist. Cuyahoga No. 110577, 2022-Ohio-467, ¶ 13 ("[A] trial court is not required "'to advise a defendant of the cumulative total of all prison terms for all the offenses at the time of the guilty plea.'"" *Id.*, quoting *State v. Gooden*, 8th Dist. Cuyahoga No. 109643, 2021-Ohio-1192, ¶ 20); *State v. Novoa*, 7th Dist. Mahoning No. 19 MA 0073, 2021-Ohio-3585, ¶ 22 (recognizing that "many appellate jurisdictions, including this Court, have continued to follow *Johnson*"); *State v. Willard*, 2021-Ohio-2552, 175 N.E.3d 989, ¶ 69 (11th Dist.) ("This court and others have recognized the court's distinction in *Bishop* and have continued to apply *Johnson*."); *State v. Gabel*, 6th Dist. Sandusky Nos. S-14-038, S-14-042, S-14-043, and S-14-045, 2015-Ohio-2803, ¶ 13-14, citing *State v. Millhoan*, 6th Dist. Lucas Nos. L-10-1328, L-10-1329, 2011-Ohio-4741; *State v. Mack*, 1st Dist. Hamilton No. C-140054, 2015-Ohio-1430, ¶ 25; *State v. Roberts*, 9th Dist. Medina No. 19CA0004-M, 2019-Ohio-4393, ¶ 6; *State v. Ellis*, 5th Dist. Coshocton Nos. 2019CA0014, 2019CA0015, 2020-Ohio-1130, ¶ 10; *State v. Whitman*, 2021-Ohio-4510, 182 N.E.3d 506 (6th Dist.) (Discussing the effects of *Johnson*, *Bishop*, and the 1998 amendment to Crim.R. 11, and finding that "the change from 'charge' to 'charges' under the 1998 amendment to Crim.R. 11(C)(2)(a) did not disturb the holding in

*Johnson.*" *Id.* at ¶ 28.). Continuing the application of prior decisions from our court, we now address Berry's plea.

### D. The Colloquy

{¶ 17} In the instant case, Berry entered into a guilty plea following two days of trial. With regard to the maximum penalty, the trial court advised Berry:

> [COURT]: Do you understand the offenses to which you are pleading guilty?
>
> Sir, you would be pleading guilty to aggravated vehicular homicide. That's a felony of the first degree. It is possibly punishable from three to eleven years in one-year increments. It carries with it a maximum discretionary fine of $20,000. Post-release control would be mandatory and it would be for a period of five years. There would be no reduction.
>
> Do you understand that?
>
> [BERRY]: Yes. Yes.
>
> [COURT]: There is a presumption for prison. Do you understand?
>
> [BERRY]: Yes.
>
> [COURT]: Additionally, you would be pleading guilty to aggravated vehicular assault. That's a felony of the second degree. It is possibly punishable from two to eight years in one-year increments. It carries with it a maximum discretionary fine of $15,000.
>
> Do you understand that?
>
> [BERRY]: Yes.
>
> [COURT]: And, lastly, sir, you will be pleading guilty to driving while under the influence. That's a misdemeanor of the first degree. It is possibly punishable from 20 days in jail or ten days in jail, up to six months.
>
> Do you understand that?
>
> [BERRY]: Yes.

[COURT]:  There's a possible discretionary fine of $525 to $1,625.

Do you understand that?

[BERRY]:  Yes.

[COURT]:  Alcohol, drug assessment, and treatment is mandatory.

Do you understand?

[BERRY]:  Yes.

[COURT]:  There's a driver's license suspension from one to seven years.

Do you understand that?

[BERRY]:  Yes.

[COURT]:  [T]here are some other class suspensions I need to review with you which would make this inoperable.

Do you understand?

[BERRY]:  Yes.

[COURT]:  Because on the aggravated vehicular homicide, you would have a Class 1 driver's license suspension.

Do you understand?

[BERRY]:  Yes.

[COURT]:  And on the aggravated vehicular assault, you would have a Class 3 driver's license suspension.

Do you understand that?

[BERRY]:  Yes.

[COURT]:  Okay.  A Class 1 driver's license suspension * * * would be a suspension of your driver's license for the rest of your life; and a Class 3, which would be applicable to the aggravated vehicular assault, would be from two to ten years.

Do you understand?

[BERRY]: Yes.

[COURT]: And then, of course, you would have the other one, the DWI, which would have been from one to seven. * * * [A]gain, that doesn't really play in it, but you need to know what your rights are with reference to it, okay?

[BERRY]: Uh-huh.

[COURT]: Okay. Sir, upon your release from prison, the Ohio Parole Board would impose a period of post-release control of five years. There would be no reduction. They may impose conditions and sanctions. Should you decide to commit an act that causes you to be found in violation of your post-release control, you can be remanded to an Ohio penal institution for an additional 50 percent of your original sentence.

Do you understand?

[BERRY]: Yes.

[COURT]: All of these cases do carry with it a disability, which would prohibit you from being able to obtain a valid carry conceal weapon certification in the future.

Do you understand that?

[BERRY]: Yes.

* * *

[COURT]: And just quickly, I'm going to go over what's been said on the record, okay? You tell me if there's anything different.

The government has agreed that you will plead guilty to aggravated vehicular homicide. That's a felony of the first degree. They've agreed that you will plead guilty to aggravated vehicular assault. That's a felony of the second degree. They've agreed that you will plead guilty to driving while under the influence. That's a misdemeanor of the first degree. The aggravated vehicular homicide is subject to a license suspension, a Class 1 license suspension, which would be for life. The Class 3 aggravated vehicular assault case is a suspension of two to ten, and the DWI is one to seven.

Now, is there anything else?

[BERRY]:  No.

[COURT]:  How do you1 plead, sir, guilty or not guilty?

[BERRY]:  Guilty.

[COURT]:  And are you, in fact, guilty, sir?

[BERRY]:  Yes.

[COURT]:  Let the record reflect the Court finds [Berry] has knowingly and voluntarily entered his plea with a full understanding of his constitutional and trial rights.

Counselors, are you satisfied that Rule 11 has been complied with?

[STATE]:  Yes, Your Honor.

[DEFENSE COUNSEL]:  Yes, Your Honor.

[COURT]: Therefore, sir, the Court will accept your plea of guilt.

(Sept. 20, 2019, tr. 401-407.)

{¶ 18} "The underlying purpose of Crim.R. 11 is to convey certain information to a defendant so that they can make a voluntary and intelligent decision regarding whether to plead guilty." *Poage*, 8th Dist. Cuyahoga No. 110577, 2022-Ohio-467 at ¶ 9, citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).  When the trial court fails to explain the constitutional rights outlined in Crim.R. 11 that a defendant waives by pleading guilty, "we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 14, citing *State v. Clark*, 119 Ohio St. 3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31, and *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 62, syllabus.  "But when a trial court fails to fully cover other 'nonconstitutional' aspects

of the plea colloquy, [such as the maximum penalty,] a defendant must affirmatively show prejudice to invalidate a plea." *Id.*, citing *Veney* at ¶ 17.

{¶ 19} The *Dangler* Court clarified that when a defendant attempts to invalidate his plea, reviewing courts should engage in the following inquiry: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶ 20} Based on the plea colloquy above, we find that trial court complied with Crim.R. 11(C) and advised Berry of the maximum penalty involved. The trial court clearly advised Berry of the maximum potential sentence for each count, including the potential fines and license suspensions, as well as the weapons forfeiture. The court then repeated the plea agreement and asked both the state and defense counsel if they were satisfied with the plea. "While it may be a best practice for a court to inform a defendant of the total of all potential sentences [the defendant] may receive, it is not a requirement for a court to comply with Crim.R. 11(C)." *Poage* at ¶ 13. The trial court is not required "'to advise a defendant of the cumulative total of all prison terms for all the offenses at the time of the guilty plea.'" *Gooden*, 8th Dist. Cuyahoga at ¶ 20, quoting *State v. Wojtowicz*, 8th Dist. Cuyahoga No. 104384, 2017-Ohio-1359, ¶ 12, citing *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 25 (8th Dist.). Because the trial court clearly informed Berry of the

maximum potential penalties he faced for each offense to which he plead guilty, the court complied with Crim.R. 11.

{¶ 21} Having answered the first question in the affirmative, we then look to the third question, and Berry can prevail only by establishing that he would not have pled guilty but for the trial court's failure to advise him of his aggregate, maximum sentence. There is nothing in the record indicating that Berry would not have pled guilty had the trial court informed him of the maximum aggregate of the sentences he faced. In addition, none of the offenses to which Berry pled guilty carry a mandatory, consecutive sentence. Consequently, the trial court was not required to inform Berry of the maximum, aggregate sentence. Accordingly, Berry has not established prejudice and he is not entitled to have his guilty plea vacated for a failure to comply with Crim.R. 11(C). *Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, at ¶ 24.

{¶ 22} Therefore, the sole assignment of error is overruled.

## III. Conclusion

{¶ 23} The change from "charge" to "charges" under the 1998 amendment to Crim.R. 11(C)(2)(a) did not disturb the Ohio Supreme Court's holding in *Johnson*. Our continued application of *Johnson* is consistent with prior decisions from this court as well as other Ohio appellate courts. Crim.R. 11(C)(2)(a) does not require a trial court to advise a defendant of the maximum, aggregate of all prison terms for all the offenses at the time of the guilty plea for discretionary, consecutive sentences. Here, because the trial court's decision to impose consecutive sentences was

discretionary, the trial court was not required to inform Berry of the aggregate, maximum penalty and the trial court's failure to provide such information was not a violation of Crim.R. 11(C)(2)(a).

{¶ 24} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR