[Cite as *State v. White*, 2025-Ohio-5346.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                   :

    Plaintiff-Appellee,                      :

    v.                                               :          Nos. 114883 and
                                                                 114905

GERROD WHITE,                                   :

    Defendant-Appellant.                  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:** November 26, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-24-694023-A and CR-24-694024-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney and Carley Berman, Assistant Prosecuting
Attorney, *for appellee.*

Gayl M. Berger, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} In this consolidated and delayed appeal, defendant-appellant Gerrod White ("White") appeals his convictions for aggravated vehicular homicide and vehicular assault in Cuyahoga C.P. No. CR-24-694023-A ("CR-694023") and

domestic violence and endangering children in Cuyahoga C.P. No. CR-24-694024-A ("CR-694024"). White challenges the validity of his guilty pleas, his domestic-violence conviction, the trial court's imposition of maximum and consecutive sentences, and defense counsel's effectiveness. Upon review, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.

## I.    Facts and Procedural History

{¶ 2}    In July 2024, White was indicted in a two-count indictment in CR-694024. Count 1 charged White with domestic violence in violation of R.C. 2929.25(A), a third-degree felony with a furthermore clause that he previously pleaded guilty to or had been convicted of two offenses of domestic violence, violations of certain sections of the Revised Code, or any offense of violence involving victims who were family or household members. Count 2 charged White with endangering children in violation of R.C. 2929.22(A), a fourth-degree felony with a furthermore clause that he previously pleaded guilty to or was convicted of the offense or any other offense involving neglect, abandonment, contributing to delinquency, or physical abuse of a child. The charges arose from an incident that occurred on July 13, 2024, involving White and the mother of his child, who was holding the child at the time. The mother of White's child was also the victim in one of his prior domestic-violence convictions.

{¶ 3}    In August 2024, White was indicted in a three-count indictment in CR-694023. Count 1 charged White with aggravated vehicular homicide in violation

of R.C. 2903.06(A)(2)(a), a third-degree felony. Count 2 charged him with vehicular assault in violation of R.C. 2903.08(A)(2)(b), a fourth-degree felony. Count 3 charged White with operating a vehicle under the influence of alcohol, drugs, or both ("OVI") in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor. These charges stemmed from a motor vehicle collision that occurred on July 21, 2024, when White operated his vehicle at approximately 54 miles per hour in a 35 miles per hour zone; veered around an ambulance operating with lights and sirens; drove through a red light; and collided with a vehicle driving through the intersection's green light, causing that vehicle to roll over and catch fire. The passenger of the vehicle struck by White was trapped inside and died as a result of the collision. The driver of the vehicle was ejected and sustained serious, ongoing injuries and trauma.

{¶ 4} In November 2024, the trial court conducted a plea hearing for both cases. The prosecutor stated the terms of White's plea agreement, and defense counsel acknowledged that those terms reflected the defense's understanding of the agreement. In exchange for the dismissal of Count 3 (OVI), White was prepared to plead guilty to Counts 1 (aggravated vehicular homicide) and 2 (vehicular assault) as charged in CR-694023. In CR-694024, White was prepared to plead guilty to amended Count 1 (domestic violence), reduced to a fourth-degree felony, and amended Count 2 (endangering children), reduced to a first-degree misdemeanor. Defense counsel noted that he met with White numerous times, read and watched the State's written reports and videos, and "reviewed with him the penalties and his

constitutional rights, and I believe that his pleas of guilty today will be knowingly, intelligently, and voluntarily done."

{¶ 5} The trial court engaged in a plea colloquy with White, advising him of his constitutional rights and the fact that many of those rights would be waived by entering a plea. The trial court also discussed community control, prison time, postrelease-control, and the potential prison terms, sanctions, and fines for each charge to which White was pleading guilty. While the trial court mentioned the one-year-mandatory-minimum and five-year-maximum driver's license suspensions associated with the vehicular-assault charge, it did not discuss any suspensions associated with the aggravated-vehicular-homicide charge.

{¶ 6} White then pleaded guilty to aggravated vehicular homicide, vehicular assault, and endangering children, as amended. Defense counsel then reiterated that he believed White's pleas were knowingly, intelligently, and voluntarily entered and the trial court satisfied all of Crim.R. 11's requirements. The court accepted White's pleas, found him guilty, dismissed Count 3 (OVI), and ordered a presentence-investigation report ("PSI report"). The trial court did not accept any change of plea to the amended domestic-violence charge in CR-694024. Nevertheless, the trial court issued journal entries in that case indicating that White pleaded guilty to the domestic-violence charge.

{¶ 7} The defense filed a sentencing memorandum, providing information regarding White's background, mental-health and substance-abuse issues, and viewpoint of the incidents leading to CR-694023 and CR-694024. Defense counsel

noted that while he did not intend to disrespect the victims in CR-694023, it was uncertain whether the driver of the vehicle struck by White was impaired and under the influence of the same substances as the decedent-passenger, whose toxicology report revealed she was positive for marijuana, cocaine, alcohol, and methamphetamine. White's counsel argued that a toxicology report for the driver was not provided by the State and that the driver could have "potentially" been driving recklessly.

{¶ 8} In January 2025, White appeared for sentencing. The State discussed the facts and circumstances surrounding White's charges. Relevant to CR-694023, the State discussed White's "demeanor and attitude on scene" after the motor-vehicle collision and asserted that White "immediately trie[d] to shift the blame off of himself by saying that he was a passenger in the vehicle and that he was not driving," although it was clear he was the driver and no one else accompanied him. The State requested that White receive maximum sentences to be run consecutively. The trial court then heard from several of the decedent's family members as well as the surviving victim in CR-694023.

{¶ 9} Defense counsel responded, providing further details regarding his client and the events that transpired. Relevant to CR-694023, defense counsel asserted that White had no recollection of the collision; accepted responsibility for his crimes; and, despite his criminal history, had "no prior traffic alcohol-related offenses." Defense counsel also mentioned that they were never provided with medical records for the driver of the vehicle struck by White. White then spoke to

the court, stating that he was "terribly and undoubtedly sorry" and it was "never [his] intention to get into any car accident."

{¶ 10} The trial court challenged White's description of the incident as an "accident" and, instead, categorized his conduct as "egregious" and "completely reckless disregard." The trial court also noted that White did not initially take accountability for the collision. The trial court asked White about his history with mental-health and substance-abuse issues, noting that programs were offered to White when he was previously incarcerated but he self-terminated. The trial court stated:

> [Y]ou had a domestic violence one week and then you had a horrible vehicular homicide, aggravated vehicular assault the very next week. So, yeah, I understand that you're an alcoholic and you drink. I understand that it hasn't been treated. I understand you have mental [-] health issues and you dealt with that, you self [-]medicated with more alcohol. I get that. However, the rest of the world can't suffer because you can't get ahold of your own problems. That's just the way it is. It might sound harsh, it might sound unfair, but the rest of the world should not have to suffer because you can't get yourself together.

The trial court also noted White's "unflattering" attitude and conduct while incarcerated, indicating that it was "not impressed."

{¶ 11} In CR-694023, the trial court sentenced White to 60 months on the aggravated-vehicular-homicide charge and 18 months on the vehicular-assault charge to run consecutively for a total of 78 months. With respect to its imposition of consecutive sentences, the trial court reiterated the following findings:

> In light of the fact that there were so many aggravating circumstances, the fact that you were impaired, the fact that what you did, and I stated this already, the egregiousness of the traffic offense with no regard to

whoever else could have been on that street at the time, this is not your run-of-the-mill run through a stop sign or go slow through a stop sign, so I find it to be an aggravating element.

The fact that it was just a week after you . . . had an incident with somebody who you had already had an incident with and gone to prison for, I find that to be an aggravating circumstance.

And . . . I will note that your accountability [for the collision] was a little tardy.

The trial court also suspended White's license for 20 years, noting: "It could be life. For 20 years you should not be driving a car. And you got a lot of years left because if you had gotten charged with what you should have gotten charged with, we probably wouldn't be seeing you until 2040 something."

{¶ 12} In CR-694024, the trial court sentenced White to 18 months on the domestic-violence charge, to be served consecutively to CR-694023 for a total of 96 months, and 6 months on the child-endangering charge.

{¶ 13} White's counsel objected to the trial court's imposition of consecutive sentences, and the parties presented arguments. White's counsel reiterated that the defense was never provided any medical records for the driver of the vehicle White struck. The trial court noted that defense counsel was "doing a wonderful job making a record" despite the "speculative" nature of his arguments. The trial court then ruled that consecutive sentences were appropriate under the circumstances, stating:

Mr. White, I hope that while you are [incarcerated] that you do some things to make yourself a better person. I think you present very well. I think that you probably have a good heart and that you would probably be way further along had you had the medication or the

mental health support and substance abuse treatment that you probably needed and I think you'd be much further along and probably would not be standing here.  You also have to be amenable to it.

. . .

And your family is here and they're supporting you. I think that is wonderful.  And I'm sure that at least one of those people probably told you [that] you need to get some help.

. . .

I'm sure you're not just hearing this for the first time from the government.  You have heard it before.  It has to be incumbent on you to say, ["]yeah, you're right, I need to do this, because I'm going to hurt somebody.["]  Now you already have.  It's very, very unfortunate.

**{¶ 14}** The following day, another proceeding was held to supplement the record.  The trial court explained:

[T]he Court has formulated its decision based upon the overriding principles and purposes of felony sentencing, which are to protect the public from future crime by the defendant or others and to punish the offender using the minimum sanctions that the Court determines accomplishes those purposes without imposing an unnecessary burden on State or local government resources.  To achieve these purposes, the Court has considered the need for incapacitation, deterrence, rehabilitation and providing for restitution.  The Court has considered the relevant sentencing guidelines provided in [R.C.] 2929.11, 2929.12 and 2929.13 as well as 2929.19.

. . .

Additionally, if the Court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish the defendant, that the consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public.  Specifically pursuant to [R.C.] 2929.14(C)(4)(c), the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger the defendant poses to the public and defendant's history of

criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant.

In so finding, the trial court mentioned that it previously discussed the conduct that necessitated its imposition of consecutive sentences. The trial court then discussed White's criminal and juvenile record; the specific offenses that it took into consideration; and the results of White's psychiatric assessment, which revealed that his recidivism risk level was high based on his attitude and behavior.

{¶ 15} In its sentencing entries, the trial court reiterated that it "considered all required factors of the law" and "that prison is consistent with the purpose of R.C. 2929.11." The entries noted that the prison sentence in CR-694023 was "to be ran consecutive with CR-694024" and the 18-month sentence imposed on amended Count 1 (domestic violence) in CR-694024 was "to be served consecutive to . . . CR-694023."

{¶ 16} In March 2025, White filed a notice of appeal and motion for a delayed appeal in each case. This court granted White's motions and consolidated his appeals for briefing, hearing, and disposition. White raises four assignments of error for review.

**Assignment of Error No. 1**

The trial court erred by accepting [White's] guilty plea without first informing him of the full effect of his guilty plea in violation of his due process rights under the United States and Ohio Constitutions.

**Assignment of Error No. 2**

[White's] sentence for domestic violence is contrary to law.

**Assignment of Error No. 3**

The trial court's imposition of maximum and consecutive sentences was contrary to law and an abuse of discretion.

**Assignment of Error No. 4**

[White] was denied his constitutional right to effective assistance of counsel.

## II.    Law and Analysis

{¶ 17} For ease of analysis, we address White's assignments of error out of order, beginning with the first, followed by the fourth, second, and third assignments of error.

### A. Guilty Plea

{¶ 18} In his first assignment of error, White challenges his guilty pleas in CR-694023, claiming that he did not understand their "full effect" since the trial court never informed him that the maximum penalty included a mandatory driver's license suspension.

{¶ 19} In considering whether a guilty plea was entered knowingly, intelligently, and voluntarily, an appellate court conducts a de novo review of the record and examines the totality of the circumstances to determine whether the trial court complied with Crim.R. 11 and adequately advised the defendant of his constitutional and nonconstitutional rights. *State v. Spock*, 2014-Ohio-606, ¶ 7, 9 (8th Dist.).

{¶ 20} A defendant's plea must be entered knowingly, intelligently, and voluntarily for the plea to be constitutional under the United States and Ohio

Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). The purpose of Crim.R. 11(C) is to require the trial court to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Poage*, 2022-Ohio-467, ¶ 9 (8th Dist.), citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). Under Crim.R. 11(C)(2), a trial court shall not accept a guilty plea in a felony case without first addressing the defendant personally and doing all the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty . . ., and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the State to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

In reviewing a trial court's colloquy to ensure that a defendant's plea was knowingly, voluntarily, and intelligently entered, the focus is on whether the dialogue between the court and the defendant demonstrated that the defendant understood the

consequences of his plea. *State v. Dangler,* 2020-Ohio-2765, ¶ 12, citing *State v. Veney,* 2008-Ohio-5200, ¶ 15-16, *State v. Clark,* 2008-Ohio-3748, ¶ 26, and *State v. Miller,* 2020-Ohio-1420, ¶ 19.

{¶ 21} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial court proceedings and that he was prejudiced by that error." *Id.* at ¶ 13, citing *State v. Perry,* 2004-Ohio-297, ¶ 14-15, and *State v. Stewart,* 51 Ohio St.2d 86, 93 (1977); Crim.R. 52. A limited exception exists when the trial court fails to explain the constitutional rights waived by the defendant when pleading guilty as outlined in Crim.R. 11(C)(2)(c). *Id.* at ¶ 14, citing *Clark* at ¶ 31, and *Veney* at syllabus. A trial court's *complete* failure to comply with a portion of Crim.R. 11(C) also eliminates the defendant's burden to show prejudice. *Id.* at ¶ 15, citing *State v. Sarkozy,* 2008-Ohio-509, ¶ 22.

{¶ 22} "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *Nero,* 56 Ohio St.3d 106 at 108. This includes instances where the trial court fails to fully cover the "nonconstitutional" aspects of the plea colloquy. *Id.* at ¶ 14, citing *Veney* at ¶ 17 (distinguishing the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b) from the constitutional-rights notifications required by Crim.R. 11(C)(2)(c)). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting

*Nero* at 108. "[T]he questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶ 23} A driver's license suspension is part of "the maximum penalty involved" in entering a guilty plea under Crim.R. 11(C)(2)(a) and falls into the nonconstitutional aspects of a plea colloquy. *State v. Johnson*, 2025-Ohio-149, ¶ 35 (1st Dist.). The State concedes that the trial court did not explicitly mention the mandatory driver's license suspension associated with the aggravated-vehicular-homicide charge. Thus, we must determine whether a complete or partial failure occurred.

{¶ 24} A complete failure under Crim.R. 11(C)(2)(a) occurs when the trial court entirely omits an advisement to a defendant about a distinct component of the maximum penalty. *State v. Walker*, 2024-Ohio-6079, ¶ 29 (1st Dist.), quoting *State v. Cook*, 2024-Ohio-4771, ¶ 34 (1st Dist.). For instance, "'a trial court completely fails to comply with Crim.R. 11(C)(2)(a) when it neglects to inform a defendant about *a class of penalties* they may suffer.'" (Emphasis in original.) *Johnson* at ¶ 19, quoting *Walker* at ¶ 29. On the other hand, a trial court partially complies with Crim.R. 11(C)(2)(a) "if it mentions all components of the maximum penalty during the plea colloquy, even if the advisement as to any one is incomplete or inaccurate." *Id.*, citing *id.* at ¶ 30 and 39.

{¶ 25} Here, the trial court advised White during its plea colloquy of his constitutional rights, the effect of entering pleas and his waiver of certain rights, and the potential prison terms, sanctions, and fines for each charge to, which White was pleading guilty. The trial court further advised White of the mandatory and maximum driver's license suspensions associated with the vehicular-assault charge but did not discuss the mandatory or potential lifetime driver's license suspension associated with the aggravated-vehicular-homicide charge. Nonetheless, a mandatory driver's license suspension advisement was given, albeit not for each applicable charge. Although the trial did not fully comply with Crim.R. 11(C)(2)(a), we cannot say that it *completely* failed to comply with the rule. The trial court did inform White that he was subject to a mandatory driver's license suspension, even if the advisement to that class of penalties was incomplete or inaccurate. Therefore, the trial court's failure was not of the type that excused White from the burden of demonstrating prejudice. *See, e.g., State v. Gove*, 2025-Ohio-701, ¶ 9 and 11 (9th Dist.) (holding that a complete failure under Crim.R. 11(C)(2)(a) did not occur and the defendant was required to demonstrate prejudice where the trial court mentioned that he could be subject to a license suspension in connection with certain convictions but did not explain that a license suspension was required for another); *Johnson* at ¶ 37-38 (finding that a trial court's failure to comply with Crim.R. 11(C)(2)(a) was not "complete" where the trial court attempted to inform the defendant of driver's license penalties but provided "seriously inaccurate" information about what those penalties were).

{¶ 26} Next, we determine whether White met his burden by showing that he was prejudiced by the trial court's partial failure to comply with Crim.R. 11(C)(2)(a). On appeal, White does not argue that he was prejudiced by the failure or assert that his guilty plea would not have been entered had the trial court advised him of the mandatory driver's license suspension or potential lifetime driver's license suspension associated with aggravated-vehicular-homicide charge. Absent any argument on appeal, we cannot say that the plea would have otherwise not been made based on the record before us. White was informed by the trial court that he was facing a mandatory driver's license suspension, albeit for the lesser range associated with the vehicular-assault charge. Ultimately, the trial court imposed a 20-year suspension, noting that the charges brought against him and potential sentences could have been much more severe. White did not object at sentencing to the imposition of a 20-year suspension and did not file a motion to withdraw his pleas. Moreover, defense counsel advised that he believed White's pleas were knowing, intelligent, and voluntary. Because White has not met his burden of demonstrating prejudice — that he would not have pleaded guilty if properly advised — we cannot say that his plea was unknowingly, unintelligently, and involuntarily entered. Accordingly, White's first assignment of error is overruled.

## B. Ineffective Assistance of Counsel

{¶ 27} In his fourth assignment of error, White claims that he received ineffective assistance of trial counsel. White claims that he was denied effective assistance of counsel in CR-694023 because his attorney did not receive medical

records for the driver of the vehicle he struck. White acknowledges that defense counsel raised the issue before the trial court, arguing that the other driver may have been impaired, able to avoid or prevent the accident, or mitigate its severity. On appeal, White asserts that "[i]t is unclear why [the] defense attorney never received [the driver's] medical records" and "this information could have definitely altered the outcome of the case if the victim induced or facilitated the offense as delineated in [R.C.] 2929.12(C)(1)."[1]

{¶ 28} "'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Powell*, 2019-Ohio-4345, ¶ 69 (8th Dist.), quoting *State v. Pawak*, 2014-Ohio-2175, ¶ 69 (8th Dist.). Because it is presumed that a licensed attorney is competent, a defendant claiming ineffective assistance bears the burden of proof. *Ohio v. Redmond*, 2022-Ohio-3734, ¶ 41 (8th Dist.), citing *State v. Black*, 2019-Ohio-4977, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). To establish an ineffective-assistance-of-counsel claim, a defendant must demonstrate that (1) his or her "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

---

[1] R.C. 2929.12 establishes a framework for assessing the seriousness of crimes and recidivism factors. R.C. 2929.12(C) provides that the sentencing court must consider certain factors "that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense[.]" One of these factors includes whether "[t]he victim induced or facilitated the offense." R.C. 2929.12(C)(1).

{¶ 29} "'When a defendant enters a guilty plea, he [or she] generally waives all appealable errors that may have occurred unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea.'" *State v. Robinson*, 2022-Ohio-1311, ¶ 33 (8th Dist.), quoting *State v. Geraci*, 2015-Ohio-2699, ¶ 14 (8th Dist.). Therefore, ineffective-assistance-of-counsel claims are generally waived by guilty pleas, except to the extent that ineffective assistance of counsel causes a plea to be less than knowing and voluntary. *Id.*, citing *id.*

{¶ 30} Our review of the record reveals that White never moved to withdraw his guilty plea. On appeal, White does not challenge his counsel's advice with respect to the plea. Nor does White claim that his plea was less than knowing or voluntary because of his counsel's purported ineffective assistance. Rather, White's ineffective-assistance-of-counsel claim focuses solely on sentencing outcomes and appears to be misguided, tenuous, and purely speculative at best. White's argument lacks any explanation as to how his counsel's alleged failure to receive the other driver's toxicology results, which may or may not exist, amounts to deficient performance — especially since counsel raised the argument before the trial court on multiple occasions. Consequently, White fails to set forth a valid basis for reversal of his CR-694023 convictions due to ineffective assistance of counsel. Accordingly, we overrule White's fourth assignment of error.

### C. Domestic-Violence Conviction

{¶ 31} In his second assignment of error, White argues that his 18-month sentence for amended Count 1 in CR-694024 is contrary to law since he did not enter

a valid plea to the domestic-violence charge. The State concedes that White never formally entered a plea to amended Count 1, despite intentions to do so, on the record.

{¶ 32} "'"A court may not convict and sentence a defendant where no plea has been entered upon the record."'" *Cleveland v. Kline*, 2025-Ohio-1063, ¶ 9 (8th Dist.), quoting *Cleveland v. Edwards*, 2018-Ohio-583, ¶ 15 (8th Dist.), quoting *Cleveland v. Chappell*, 2017-Ohio-4070, ¶ 14 (8th Dist.); *see also State v. Geiger*, 2024-Ohio-740, ¶ 8 (8th Dist.).

{¶ 33} Our review of the record reveals that White entered a guilty plea to amended Count 2 (child endangering) but did not enter a guilty plea to amended Count 1 (domestic violence). Nonetheless, subsequent journal entries stated that White pleaded guilty to the domestic-violence charge, accepted the pleas, and imposed sentences. However, the trial court could not convict and sentence White where a plea had not been entered upon the record pursuant to the plea agreement. Consequently, White's convictions in CR-694024 are nullities. Accordingly, we sustain White's second assignment of error, vacate White's convictions and any pleas in CR-694024, and remand the matter to the trial court for further proceedings.

### D. Maximum and Consecutive Sentences in CR-694023

{¶ 34} In his third assignment of error, White argues that the trial court's imposition of maximum and consecutive sentences was contrary to law and an abuse of discretion. Our review of White's assignment of error is limited to CR-694023

since the reversal of White's CR-694024 convictions render the issue moot in that case.

{¶ 35} To determine whether the trial court imposed a proper felony sentence, an appellate court must "review the record, including findings underlying the sentence" and may modify or vacate the sentence only "if it clearly and convincingly finds . . . that the record does not support the sentencing court's findings under . . . [R.C. 2929.14(C)(4)]" or "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2).

{¶ 36} R.C. 2929.14(C)(4) establishes parameters for imposing consecutive sentences. To impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public; and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 37} Next, we turn to the statutes governing felony sentencing. R.C. 2929.11 dictates the purposes of felony sentencing and states, in relevant part:

> (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

> (B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

R.C. 2929.12 establishes that a trial court has discretion to determine the most effective way to comply with R.C. 2929.11 and sets forth additional factors the court must consider in exercising that discretion.[2]  The factors listed in R.C. 2929.12(B) and (C) relate to the seriousness of the offender's conduct while the factors enumerated in R.C. 2929.12(D) and (E) contemplate the likelihood of recidivism. Relevant to this appeal, these factors include whether:

- the victim suffered serious, psychological, or economic harm as a result of the offense under R.C. 2929.12(B)(2);

---

[2] The current version of R.C. 2929.12 became effective in April 2025.  This opinion references the version of the statute then in effect, which was effective from September 2014 to March 2025.  While some cited portions of the statute have since been modified, those modifications are irrelevant to the issues contemplated herein.

- the victim induced or facilitated the offense under R.C. 2929.12(C)(1);

- the offender did not expect to cause physical harm to any person or property when committing the offense under R.C. 2929.12(C)(3);

- there were substantial grounds to mitigate the offenders conduct under R.C. 2929.12(C)(4);

- the offender has a history of delinquent-child adjudications or criminal convictions under R.C. 2929.12(D)(2) or, conversely, the offender has no prior adjudications or convictions or led a law-abiding life for a significant number of years prior to committing the offense under R.C. 2929.12(E)(1)-(3);

- the offender has not been rehabilitated to a satisfactory degree or responded favorably to previous sanctions under R.C. 2929.12(D)(3);

- the offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that pattern or refuses treatment under R.C. 2929.12(D)(4);

- the offense was committed under circumstances not likely to recur under R.C. 2929.12(E)(4); and

- the offender shows genuine remorse for the offense under R.C. 2929.12(D)(5).

{¶ 38} The trial court is presumed to have considered the R.C. 2929.11 and 2929.12 factors absent an affirmative showing that it failed to do so. *State v. Halasz*, 2025-Ohio-3072, ¶ 15 (8th Dist.), citing *State v. White*, 2013-Ohio-4925, ¶ 10 (8th Dist.). "A statement in the trial court's sentencing entry that it considered all the required factors of law is sufficient to fulfill the trial court's obligation under the sentencing statutes." *State v. Martin*, 2025-Ohio-744, ¶ 10 (8th Dist.), citing *State v. Riemer*, 2021-Ohio-4122, ¶ 18 (8th Dist.). The trial court is not otherwise required

to make findings or give its reasoning for imposing a maximum sentence and has full discretion to impose a sentence within the statutory range. *Halasz* at ¶ 14, citing *State v. Foster*, 2006-Ohio-856, paragraph seven of the syllabus. A sentence imposed within the statutory range and made after the consideration of R.C. 2929.11's principles of felony sentencing and R.C. 2929.12's sentencing factors is not contrary to law; rather, the sentence — even if it is a maximum sentence — is "'"presumptively valid."'" *Id.*, quoting *State v. Hinton*, 2015-Ohio-4907, ¶ 10 (8th Dist.), quoting *State v. Collier*, 2011-Ohio-2791, ¶ 15 (8th Dist.).

{¶ 39} With respect to CR-694023, White argues that he "expressed remorse and accepted full responsibility" and claims that the trial court did not make any comments related to R.C. 2929.11(B), his PSI report, or the consistency or proportionality of his sentence. White does not claim his sentence was outside of the statutory range or dispute the trial court's R.C. 2929.11- and 2929.12-related findings. White also concludes that "[t]he record in this case indicates that a lesser concurrent sentence would accomplish the purposes of felony sentencing" without challenging the trial court's consecutive-sentences findings under R.C. 2929.14(C)(4) or arguing that they were not adequately made.

{¶ 40} Our review of the record reveals that the trial court stated both on the record and in its sentencing entries that it considered the purposes of felony sentencing and the required statutory factors. The trial court was not required to make further findings or give its reasoning for imposing maximum sentences. Nevertheless, the trial court made specific findings in open court related to the

seriousness of White's conduct and his likelihood for recidivism. The trial court challenged White's characterization of the "accident" and, instead, described White's conduct as "egregious" and "completely reckless disregard." The trial court noted White's "tardy" accountability for the collision, which resulted in serious injuries to the other vehicle's driver and the death of its passenger. The trial court also discussed White's criminal and juvenile record, "unflattering" attitude and conduct while incarcerated, and his failure to address mental-health and substance-abuse issues or better himself despite having opportunities to do so. Thus, White has not affirmatively demonstrated that the trial court failed to consider the required R.C. 2929.11 and 2929.12 factors. Nor can we say that the trial court's consecutive-sentence findings under R.C. 2929.14(C)(4)(c) were not clearly and convincingly supported by the record, particularly where White makes no argument to the contrary. Therefore, we cannot conclude that the maximum and consecutive sentences imposed in CR-694023 were contrary to law.

{¶ 41} Accordingly, White's third assignment of error is overruled.

{¶ 42} Judgment affirmed in part, reversed in part, and remanded. Specifically, we affirm White's convictions in CR-694023, vacate White's convictions and any pleas in CR-694024, and remand CR-694024 for further proceedings.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

DEENA R. CALABRESE, J., CONCURS;
EILEEN T. GALLAGHER, P.J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)


EILEEN T. GALLAGHER, P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 43} Respectfully, I concur in part and dissent in part. I concur with the majority opinion overruling the second and fourth assignments of error, but I dissent from the resolution of the first assignment of error, and I would consequently find the third assignment of error to be moot. I do not find that the trial court fully complied with Crim.R. 11(C) because it did not inform White of the license suspension related to the aggravated-vehicular-homicide charge.

{¶ 44} There is no dispute that the court was required to impose a mandatory driver's license suspension on the aggravated-vehicular-homicide count and that the court did not inform White of this particular sanction when it was discussing the penalties related to the aggravated-vehicular-assault count during the plea colloquy. Pursuant to *State v. Dangler*, 2020-Ohio-2765, a ""trial court's total failure to

inform a defendant of *a distinct component of the maximum penalty* during a plea colloquy constitutes a complete failure to comply with Crim.R. 11(C)(2)(a), thereby requiring the vacation of the defendant's guilty or no contest plea.'"'" (Emphasis added.) *State v. Spivey*, 2024-Ohio-5479, ¶ 14 (8th Dist.), quoting *State v. Rogers*, 2020-Ohio-4102, ¶ 19 (12th Dist.), quoting *State v. Fabian*, 2020-Ohio-3926, ¶ 20 (12th Dist.).

{¶ 45} When outlining the potential penalties for the vehicular-assault charge, the trial court advised White that he faced a license suspension of one to five years, but he was never informed of the license suspension for the aggravated-vehicular-assault count, which was three years to life. The court ultimately sentenced White to a 20-year license suspension.

{¶ 46} The majority holds that there was not a complete failure to comply with Crim.R. 11(C) because the trial court did advise White of a driver's license suspension — even if it was not for each applicable charge. However, this court has held that "a trial court properly complies with Crim.R. 11(C) by informing the defendant of the maximum sentences faced for *each* of the individual charged crimes." (Emphasis added.) *State v. Poage*, 2022-Ohio-467, ¶ 13 (8th Dist.), citing *State v. Johnson*, 40 Ohio St.3d 130, 134 (1988). "A defendant must know the maximum penalty involved before a trial court accepts his or her guilty plea." *State v. Tackett*, 2023-Ohio-2298, ¶ 22 (8th Dist.), citing *State v. Corbin*, 2001-Ohio-4140 (8th Dist.), citing *State v. Wilson*, 55 Ohio App.2d 64 (1st Dist. 1978), and *State v. Gibson*, 34 Ohio App.3d 146 (8th Dist. 1986). "[T]he 'maximum penalty' referred

to in Crim.R. 11(C)(2)(a) is *for the single crime for which the plea is offered*." (Emphasis added.) *State v. Smith*, 2025-Ohio-1548, ¶ 18 (8th Dist.), citing *State v. Berry*, 2023-Ohio-605, ¶ 9 (8th Dist.), citing *Johnson*. As acknowledged by the majority, a license suspension is a component of the maximum penalty. *State v. Orenich*, 2025-Ohio-1367, ¶ 11 (8th Dist.), citing *State v. Johnson*, 2025-Ohio-149, ¶ 35 (1st Dist.); *see also Berry* at ¶ 20 ("The trial court clearly advised Berry of the maximum potential sentences for each count, including the potential fines and license suspensions, as well as the weapons forfeiture.").

{¶ 47} The majority relies on *State v. Gove*, 2025-Ohio-701 (9th Dist.), which, on its face, appears similar to the instant case. In *Gove*, the trial court advised the defendant that he could face a license suspension connected with certain convictions but did not mention the mandatory license suspension that was required for another charge. The *Gove* Court determined that the trial court did not completely fail to comply with Crim.R. 11(C) because the defendant was informed that he *could* face a suspension of his driving privileges but not that the suspension was mandatory. *Gove* did not address the issue at hand; it did not analyze the trial court's failure to inform the defendant of the maximum penalty for each of the individual charges to which he pleaded guilty. Because *Gove* focused solely on the court's advisement that the defendant *could* face a license suspension rather than the fact that it was mandatory, *Gove* provides no authority for this matter.

{¶ 48} As outlined above, Ohio law requires trial courts to inform a defendant of every aspect of a maximum penalty for *each* individual offense to which

the defendant is pleading guilty. A review of the transcript plainly demonstrates that White was not properly advised with regard to the aggravated-vehicular-homicide count. Accordingly, the trial court completely failed to inform White of the maximum penalty as required by Crim.R. 11(C)(2)(a), and White was not required to demonstrate prejudice. I would sustain the first assignment of error, vacate White's plea on this count, and remand this matter to the trial court for a new plea hearing. I would further find that the third assigned error, regarding sentencing, is rendered moot.